## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| NORA HILGART-GRIFF et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:24-cv-13425 |
| | ) | |
| v. | ) | Hon. Laurie J. Michelson |
| | ) | Mag. Elizabeth A. Stafford |
| REGENTS OF THE UNIVERSITY | ) | |
| OF MICHIGAN et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS

Defendants Regents of the University of Michigan, Santa Ono, Martino Harmon, Omar Torres, Stephanie Jackson, and Grand River Solutions, Inc.[1] hereby move this Court to dismiss Plaintiffs' Complaint in its entirety for failure to state a claim upon which relief can be granted and for want of jurisdiction pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. In the alternative, Defendants hereby move this Court to strike the Complaint's class action allegations pursuant to Rule 23(d)(1)(D).

---

[1] Throughout this Motion and the accompanying materials, the term "Defendants" refers to all named defendants other than Beyond Consulting (d/b/a INCompliance), and the term "Individual Defendants" refers to Santa Ono, Martino Harmon, Omar Torres, and Stephanie Jackson.

The Complaint fails to state any claim. It does not state a claim under the First Amendment because there are no plausible allegations of an unlawful prior restraint, retaliation, or content- or viewpoint-based discrimination. It does not state a due process claim because it does not adequately allege that the University accountability proceedings at issue implicated protected property or liberty interests; and, in any case, Plaintiffs were provided more than sufficient process in their respective proceedings. The Complaint also fails to state an equal protection claim because it does not offer anything but conclusory allegations that any University policy or proceeding at issue was applied or conducted in a discriminatory manner. In addition, the Complaint's demand for money damages from the Individual Defendants should be dismissed due to lack of personal involvement, sovereign immunity, and qualified immunity. Finally, the Complaint's class action allegations should be stricken for failure to adequately allege numerosity and because the Complaint, as pleaded, confirms that there are individualized and fact-intensive issues involved in identifying class members and adjudicating their claims.

Pursuant to Local Rule 7.1(a), counsel for Defendants met and conferred with counsel for Plaintiffs via videoconference on March 19, 2025, regarding this Motion. Counsel for Plaintiffs did not concur in the relief sought.

WHEREFORE, Defendants respectfully request that the Court grant this Motion and either dismiss the Complaint in its entirety, or, if any claims remain,

strike the class action allegations from the Complaint.

Dated: April 1, 2025                    Respectfully submitted,

                                        /s/ Lauren J. Hartz
Brian M. Schwartz (P69018)              Lauren J. Hartz (D.C. Bar No. 1029864)
Miller, Canfield, Paddock               Ishan Bhabha (D.C. Bar No. 1015673)
and Stone, P.L.C.                       Jenner & Block LLP
150 W. Jefferson, Ste. 2500             1099 New York Avenue, NW Suite 900
Detroit, MI 48226                       Washington, DC 20001-4412
(313) 963-6420                          +1 202 639 6000
schwartzb@millercanfield.com            lhartz@jenner.com
                                        ibhabha@jenner.com

                                        *Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| NORA HILGART-GRIFF et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:24-cv-13425 |
| | ) | |
| v. | ) | Hon. Laurie J. Michelson |
| | ) | Mag. Elizabeth A. Stafford |
| REGENTS OF THE UNIVERSITY | ) | |
| OF MICHIGAN et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

# BRIEF IN SUPPORT OF DEFENDANTS'
# MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE,
# TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...........................................................................iii

ISSUES PRESENTED ..................................................................................ix

CONTROLLING OR MOST RELEVANT AUTHORITY...............................x

INTRODUCTION ........................................................................................1

BACKGROUND...........................................................................................3

      A.    The University Has Viewpoint-Neutral Accountability Policies And Procedures For Students And Recognized Student Organizations...................................................................3

      B.    The Individual Plaintiffs Were Held Accountable For The Ruthven Occupation Based On Established University Procedures. ..................................................................................6

      C.    SAFE Faced Accountability For Repeated Misconduct. ...................7

      D.    Plaintiffs Filed This Lawsuit.........................................................8

STANDARDS OF REVIEW...........................................................................9

ARGUMENT...............................................................................................10

I.    Plaintiffs Fail To State A Claim Under The First Amendment.................10

      A.    The Complaint Does Not Allege An Unlawful Prior Restraint ........10

      B.    The Complaint Does Not Allege First Amendment Retaliation. ..............................................................................12

      C.    Any Other First Amendment Theories Fail On The Same Grounds.....................................................................................16

II.    The Complaint Fails To State A Due Process Claim. .............................16

      A.    The Individual Plaintiffs Do Not State A Claim. ...........................17

      B.    SAFE's Theories Are Meritless. ..................................................20

III.   The Complaint Fails To State An Equal Protection Claim. .......................21

IV.   At Minimum, Damages Claims Against The Individual Defendants
      Must Be Dismissed For Multiple Reasons. ..............................................23

V.    The Complaint's Class Allegations Should Be Stricken...........................27

      A.   The Class Is Insufficiently Numerous. .........................................28

      B.   Individualized Issues Defeat Predominance And Ascertainability....29

CONCLUSION ...........................................................................................32

## TABLE OF AUTHORITIES

CASES

*In re American Medical Systems, Inc.*, 75 F.3d 1069 (6th Cir. 1996)..................28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).........................................................9, 17

*Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002)..................................................13

*Bhattacharya v. Murray*, 93 F.4th 675 (4th Cir.), *cert. denied*, 145 S.
Ct. 443 (2024) ...........................................................14

*Black Lives Matter, D.C. v. United States*, No. 20-cv-1469, 2025 WL
823903 (D.D.C. Mar. 14, 2025)...............................................30

*Bond Pharmacy Inc. v. Health Law Partners, P.C.*, No. 23-cv-13069,
2024 WL 4272735 (E.D. Mich. Sept. 23, 2024)............................................3

*Bowman v. White*, 444 F.3d 967 (8th Cir. 2006)...............................................12

*Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich.
2015).....................................................27

*Bright v. Gallia County*, 753 F.3d 639 (6th Cir. 2014) ....................................13

*Carney v. University of Akron*, No. 15-cv-2309, 2016 WL 4036726
(N.D. Ohio July 28, 2016) ...........................................................26

*Crisp v. Neel-Wilson*, No. 15-cv-1265, 2015 WL 5882126 (S.D. Ohio
Oct. 7, 2015)........................................................24

*Crossroads Group, LLC v. City of Cleveland Heights*, 346 F.R.D. 75
(N.D. Ohio 2024) ................................................31

*Cunningham v. Blackwell*, 41 F.4th 530 (6th Cir. 2022) ...................................25

*Daskalea v. Washington Humane Society*, 275 F.R.D. 346 (D.D.C.
2011)..............................................................31

*Day v. Whirlpool Corp.*, No. 13-cv-02164, 2014 WL 12461378 (W.D.
Ark. Dec. 3, 2014)....................................................28

*Dickens ex rel. Dickens v. Johnson County Board of Education*, 661 F.
  Supp. 155 (E.D. Tenn. 1987) .................................................................. 17

*Dixon v. University of Toledo*, 702 F.3d 269 (6th Cir. 2012) ............................ 13

*Doe v. Ohio State University*, 239 F. Supp. 3d 1048 (S.D. Ohio 2017),
  *on reconsideration in part*, 323 F. Supp. 3d 962 (S.D. Ohio 2018) ..... 18–19, 20

*Doe v. Rector & Visitors of George Mason University*, 132 F. Supp. 3d
  712 (E.D. Va. 2015) ............................................................................... 26

*Doe v. University of Cincinnati*, 872 F.3d 393 (6th Cir. 2017) ......................... 17

*Eidson v. Tennessee Department of Children's Services*, 510 F.3d 631
  (6th Cir. 2007) .......................................................................................... 9

*Estate of Ritter ex rel. Ritter v. University of Michigan*, 851 F.2d 846
  (6th Cir. 1988) ........................................................................................ 24

*Filarsky v. Delia*, 566 U.S. 377 (2012) ............................................................ 25

*Flaim v. Medical College of Ohio*, 418 F.3d 629 (6th Cir. 2005) ...... 17, 18, 19, 20

*Gaddis v. Zanotti*, No. 19-cv-781, 2020 WL 6382020 (S.D. Ill. Oct. 30,
  2020) ...................................................................................................... 30

*Garza v. Fusion Industries, LLC*, No. 20-cv-336, 2023 WL 6276713
  (W.D. Okla. Sept. 26, 2023) ................................................................... 28

*General Telephone Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318
  (1980) ..................................................................................................... 28

*Getz v. Swoap*, 833 F.3d 646 (6th Cir. 2016) .................................................. 25

*Gischel v. University of Cincinnati*, 302 F. Supp. 3d 961 (S.D. Ohio
  2018), *on reconsideration in part*, No. 17-cv-475, 2018 WL
  9944971 (S.D. Ohio June 26, 2018) ....................................................... 26

*Golden v. City of Columbus*, 404 F.3d 950 (6th Cir. 2005) ......................... 26, 28

*Goss v. Lopez*, 419 U.S. 565 (1975) ................................................................ 18

*Green v. Liberty Ins. Corp.*, No. 15-cv-10434, 2016 WL 1259110 (E.D.
  Mich. Mar. 30, 2016) ......................................................................... 10, 28

*Harbin-Bey v. Rutter*, 420 F.3d 571 (6th Cir. 2005) ................................... 15, 16

*Hasanaj v. Detroit Public Schools Community District*, 35 F.4th 437
  (6th Cir. 2022) ........................................................................ 16

*Hudson v. City of Chicago*, 242 F.R.D. 496 (N.D. Ill. 2007) ............................ 31

*Hum v. Dericks*, 162 F.R.D. 628 (D. Haw. 1995) ......................................... 28

*Hutt v. Greenix Pest Control, LLC*, No. 20-cv-1108, 2023 WL 2726357
  (S.D. Ohio Mar. 31, 2023) ........................................................... 27

*International Outdoor, Inc. v. City of Troy*, 974 F.3d 690 (6th Cir.
  2020) ................................................................................ 11

*Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999), *abrogated
  on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506
  (2002) ................................................................................. 3

*Jaksa v. Regents of University of Michigan*, 597 F. Supp. 1245 (E.D.
  Mich. 1984), *aff'd*, 787 F.2d 590, 1986 WL 16012 (6th Cir. 1986)
  (unpublished table decision) ..................................................... 17, 18

*Jones v. Lubrizol Advanced Materials, Inc.*, 583 F. Supp. 3d 1045 (N.D.
  Ohio 2022) ........................................................................ 27–28

*Kentucky v. Graham*, 473 U.S. 159 (1985) ............................................... 24

*Kerchen v. University of Michigan*, 100 F.4th 751 (6th Cir. 2024) ...................... 25

*King v. Zamiara*, 680 F.3d 686 (6th Cir. 2012) ........................................ 14

*Laney v. Farley*, 501 F.3d 577 (6th Cir. 2007) ....................................... 17

*League of United Latin American Citizens v. Bredesen*, 500 F.3d 523
  (6th Cir. 2007) ....................................................................... 9

*Lowery v. Jefferson County Board of Education*, 586 F.3d 427 (6th Cir.
  2009) ................................................................................ 11

*Lunini v. Grayeb*, 395 F.3d 761 (7th Cir. 2005) ...................................... 27

*Marcavage v. City of Philadelphia*, 481 F. App'x 742 (3d Cir. 2012) ................... 23

*McMillan v. Fielding*, 136 F. App'x 818 (6th Cir. 2005) .................................. 15

*Nylen v. City of Grand Rapids*, 475 F. Supp. 3d 744 (W.D. Mich. 2019) ............ 25

*O'Neil v. Appel*, 165 F.R.D. 479 (W.D. Mich. 1996) ................................. 28, 29

*Oom v. Michaels Cos.*, No. 16-cv-257, 2017 WL 3048540 (W.D. Mich. July 19, 2017) ........................................................................ 28

*In re Park Central Global Litigation*, No. 09-cv-765, 2014 WL 4261950 (N.D. Tex. Aug. 25, 2014) .......................................................... 28

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) ...... 9–10, 27

*Prows v. City of Oxford*, No. 22-cv-693, 2023 WL 3868266 (S.D. Ohio June 7, 2023) ........................................................................ 16

*Reform America v. City of Detroit*, 37 F.4th 1138 (6th Cir. 2022) ...................... 23

*Reichle v. Howards*, 566 U.S. 658 (2012) ......................................................... 26

*Romberio v. UnumProvident Corp.*, 385 F. App'x 423 (6th Cir. 2009) .............. 31

*Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460 (6th Cir. 2017) ............................................................... 30

*Scarbrough v. Morgan County Board of Education*, 470 F.3d 250 (6th Cir. 2006) .................................................................................. 21

*Schilling v. Kenton County*, No. 10-cv-143, 2011 WL 293759 (E.D. Ky. Jan. 27, 2011) ......................................................................... 28

*Sears v. Washington*, 655 F. Supp. 3d 624 (E.D. Mich. 2023) .......................... 23

*Sensabaugh v. Halliburton*, 937 F.3d 621 (6th Cir. 2019) ................................ 14

*Smith v. Bauer*, No. 22-cv-382, 2023 WL 2706252 (W.D. Mich. Mar. 13, 2023) ............................................................................ 22

*Sullivan v. City of Berkeley*, 328 F.R.D. 352 (N.D. Cal. 2018) ......................... 29

*Sullivan v. Ohio State University*, No. 23-cv-3174, __ F. Supp. 3d __, 2025 WL 828966 (S.D. Ohio Jan. 31, 2025) ............................................. 16

*Thomas v. Chicago Park District*, 534 U.S. 316 (2002)............................. 11, 12

*Torres v. Goddard*, 314 F.R.D. 644 (D. Ariz. 2010)......................................... 31

*Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357
　　(6th Cir. 2018)........................................................................................ 21

*Turnage v. Norfolk Southern Corp.*, 307 F. App'x 918 (6th Cir. 2009).............. 29

*Vereecke v. Huron Valley School District*, 609 F.3d 392 (6th Cir.
　　2010).................................................................................................... 13

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)................................... 21

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)...................................... 29

*White v. Pauly*, 580 U.S. 73 (2017) ............................................................... 25

*Whiting v. City of Athens*, 699 F. Supp. 3d 652 (E.D. Tenn. 2023), *aff'd*,
　　No. 23-cv-6082, 2024 WL 3537651 (6th Cir. July 25, 2024)................. 13, 14

*Will v. Michigan Department of State Police*, 491 U.S. 58 (1989)..................... 24

*Wood v. Strickland*, 420 U.S. 308 (1975), *abrogated on other grounds
　　by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)............................................ 20

*Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532 (6th Cir.
　　2012).................................................................................................... 31

**STATUTES**

20 U.S.C. § 1232g.......................................................................................... 14

42 U.S.C. § 1983 .............................................................................................. 8

**RULES**

Fed. R. Civ. P. 23(b)(3) ................................................................................. 30

Fed. R. Civ. P. 23(c)(1)(A).............................................................................. 9

**OTHER AUTHORITIES**

Eilene Koo & Marissa Corsi, *Washtenaw County Prosecutor's Office
Authorizes Criminal Charges Against 4 Individuals For Nov. 17
Protest*, Mich. Daily (May 16, 2024), https://www.michigandaily
.com/news/news-briefs/washtenaw-county-prosecutors-office-au
thorizes-criminal-charges-against-four-individuals-for-nov-17-
protests/ [https://perma.cc/8FZX-QBPL]....................................................6

## <u>ISSUES PRESENTED</u>

1) Does the Complaint fail to state a claim under the First Amendment?

2) Does the Complaint fail to state a procedural due process claim under the Fourteenth Amendment?

3) Does the Complaint fail to state an equal protection claim under the Fourteenth Amendment?

4) Are the Complaint's demands for money damages barred by lack of personal involvement, sovereign immunity, and/or qualified immunity?

5) Should the class action allegations be stricken because the Complaint on its face does not support class certification?

## CONTROLLING OR MOST RELEVANT AUTHORITY

**CONSTITUTIONAL PROVISIONS**
U.S. Const. amend. I
U.S. Const. amend. XIV

**CASE LAW PERTAINING TO FIRST AMENDMENT CLAIM**
*Bowman v. White*, 444 F.3d 967 (8th Cir. 2006)
*Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427 (6th Cir. 2009)
*Sensabaugh v. Halliburton*, 937 F.3d 621 (6th Cir. 2019)
*Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002)

**CASE LAW PERTAINING TO PROCEDURAL DUE PROCESS CLAIM**
*Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017)
*Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005)
*Laney v. Farley*, 501 F.3d 577 (6th Cir. 2007)

**CASE LAW PERTAINING TO EQUAL PROTECTION CLAIM**
*Reform Am. v. City of Detroit*, 37 F.4th 1138 (6th Cir. 2022)
*Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250 (6th Cir. 2006)
*Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357 (6th Cir. 2018)

**CASE LAW PERTAINING TO DAMAGES CLAIMS**
*Cunningham v. Blackwell*, 41 F.4th 530 (6th Cir. 2022)
*Est. of Ritter ex rel. Ritter v. Univ. of Mich.*, 851 F.2d 846 (6th Cir. 1988)
*Filarsky v. Delia*, 566 U.S. 377 (2012)
*Kentucky v. Graham*, 473 U.S. 159 (1985)
*Kerchen v. Univ. of Michigan*, 100 F.4th 751 (6th Cir. 2024)
*Sears v. Washington*, 655 F. Supp. 3d 624 (E.D. Mich. 2023)
*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)

**CASE LAW PERTAINING TO CLASS ALLEGATIONS**
*O'Neil v. Appel*, 165 F.R.D. 479 (W.D. Mich. 1996)
*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011)
*Romberio v. UnumProvident Corp.*, 385 F. App'x 423 (6th Cir. 2009)
*Turnage v. Norfolk Southern Corp.*, 307 F. App'x 918 (6th Cir. 2009)

**INTRODUCTION**

The University of Michigan has a proud and robust tradition of free speech on campus. That tradition is supported and in fact enhanced by clear and public policies for students and recognized student organizations ("RSOs") that ensure fair access and appropriate use of University spaces; explain what activity crosses the line into prohibited conduct; and establish comprehensive processes for adjudicating violations and imposing sanctions. Like colleges and universities around the country, the University enforces these policies to ensure that *all* community members can exercise their rights to freedom of expression. These policies do not discriminate based on content or viewpoint. Rather, they allow the University to regulate conduct that significantly disrupts campus operations, threatens community safety, or infringes on the rights of other members of the community to express themselves.

This putative class action lawsuit challenges the application of those policies to six students and one RSO who have faced accountability for actions that violate University policies. Their Complaint ignores the reality that thousands of pro-Palestinian community members have protested zealously without consequence, including through events, protests, and demonstrations for which the University has provided space and resources. Plaintiffs have taken a much different path from those other protestors, one that has nothing to do with their speech. Plaintiffs have faced accountability not because of their viewpoint, but because of their willful and in

1

some cases repeated violations of longstanding University policies—including by participating in a violent mob that forced its way into a locked building; and, in SAFE's case, disrupting a busy community-wide event to the detriment of health and safety and trespassing and vandalizing the home of a University official. In most cases, Plaintiffs do not even dispute their participation in those events (which have led to criminal charges for some participants). Plaintiffs cannot escape the consequences of their actions under the guise of constitutional claims.

The Complaint should be dismissed in its entirety. First, it fails to state any claim. Plaintiffs contend the University violated their First Amendment rights through prior restraint, retaliation, and content- and viewpoint-based discrimination. Yet the Complaint's allegations show only the application of neutral policies about space reservations and prohibited conduct, and they offer nothing more than conclusory speculation that Plaintiffs were targeted for their beliefs. Nor does the Complaint adequately plead a procedural due process violation based on Plaintiffs' accountability proceedings: the allegations do not identify a qualifying liberty or property interest, and in all events Plaintiffs have received clear notice and robust hearings and appeals to adjudicate their misconduct. Plaintiffs are simply averse to being held accountable. Finally, the equal protection claim is plainly deficient: Plaintiffs do not allege they belong to a protected class, nor do they identify any similarly situated students or organizations who received more favorable treatment

for equivalent conduct. Setting aside these pleading deficiencies, Plaintiffs cannot sustain their demands for money damages from the Individual Defendants due to lack of personal involvement, sovereign immunity, and qualified immunity.

Finally, if any claim survives dismissal, it cannot proceed as a putative class action. The class allegations are so irreparably deficient that they should be stricken at the outset: the putative class is insufficiently numerous, and the individualized issues as to class membership and merits overwhelm any common questions.

## BACKGROUND

Consistent with the applicable standard of review, this background is based on the factual allegations in the pleading and documents to which those allegations refer. Those documents, attached as exhibits to this Motion, are properly considered because they are referred to in the Complaint and central to the claims. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Where exhibits "contradict[] allegations in the complaint, rendering them implausible, the exhibit trumps the allegations." *Bond Pharmacy Inc. v. Health L. Partners, P.C.*, No. 23-cv-13069, 2024 WL 4272735, at *2 (E.D. Mich. Sept. 23, 2024) (quotation marks omitted).

**A.    The University Has Viewpoint-Neutral Accountability Policies And Procedures For Students And Recognized Student Organizations.**

Longstanding policies govern conduct and accountability for students and RSOs. *See* ECF No. 1 ("Compl.") ¶¶ 77–97, 173–179, PageID.16–19, 33–34. While

3

the Complaint extensively criticizes recent changes to policies, it acknowledges that the challenged accountability proceedings all took place under the pre-amendment versions of the policies at issue. *See id.* ¶¶ 98–111, 147, PageID.20–22, 28–29.

**Students.** The *Statement of Student Rights and Responsibilities* ("*Statement*") applies to students, including Plaintiffs Nora Hilgart-Griff, Jared Eno, Kristen Bagdasarian, Zaynab Elkolaly, Rhea Chappell (legally "Nolan Chappell"), and Arwa Hassaballa ("Individual Plaintiffs"). *Id.* ¶¶ 77, 144, PageID.16, 28. It sets forth "Student Rights" and "Student Responsibilities," as well as "Violations" that could subject a student to discipline. Ex. A at 2–4. Provision N prohibits "[o]bstructing or disrupting classes . . . or other activities or programs of the University; or obstructing access to university facilities, property, or programs (except for behavior that is protected by the University's policy on Freedom of Speech and Artistic Expression)"; and Provision Q prohibits "[f]ailing to comply with lawful requests to leave a University controlled premises." Compl. ¶ 144, PageID.28; Ex. A at 3–4.

The *Statement* establishes robust procedures to adjudicate violations and impose any sanctions. Compl. ¶¶ 77–97, PageID.16–19. The procedures include a complaint; resolution of the complaint's allegations, which can proceed through accepting responsibility via agreement, an adaptable conflict resolution process, or a hearing before a faculty member, staff member, or student panel; and an appeals process where an Appeals Board reviews the matter and recommends a decision to

the Vice President of Student Life. *Id.* ¶¶ 80–97, PageID.17–19; *see* Ex. A at 5–8. The Vice President can accept or modify the Appeals Board's recommendations and makes the ultimate determination. Compl. ¶¶ 96–97, PageID.19. The lowest sanction for a violation is a formal reprimand, which is "[a] formal notice that the [*Statement*] has been violated and that future violations will be dealt with more severely." Ex. A at 9; *see* Compl. ¶ 157, PageID.30.

***Student Organizations.*** For student organizations, University policies include the *Standards of Conduct for Recognized Student Organizations* ("*Standards*") and the Student Organization Advancement and Recognition Accountability Procedure Manual ("SOAR Manual"). Compl. ¶¶ 172, 181, 187, PageID.33–35. Under the *Standards*, RSOs (1) "must not foster, promote, or participate in activities that unreasonably threaten the safety or well being of their members" or others (§ III.B.1); (2) "must use University-controlled spaces in accordance with the standards of the particular space" (§ III.B.6); and (3) "must adhere to University policies, including but not limited to the . . . Diag Policy" (§ III.B.10). Ex. B; *see also* Ex. D. Potential sanctions range from reprimand to suspension. Ex. B § IV.

The SOAR Manual establishes accountability procedures for RSOs, which start with a complaint and then follow a variety of resolution pathways. Compl. ¶¶ 173, 175, PageID.33–34; *see* Ex. C at 7–17. The Formal Resolution Process requires a student-panel hearing. Compl. ¶¶ 176–177, PageID.34; *see* Ex. C at 13–

15. The panel submits a recommendation to the Dean of Students, who can uphold, overturn, or modify it. Compl. ¶ 178, PageID.34; *see* Ex. C at 16, 18–19. If appealed, an Appeals Board makes recommendations to the Vice President of Student Life, who accepts or modifies them. Compl. ¶ 178, PageID.34; *see* Ex. C at 20–21.

### B.   The Individual Plaintiffs Were Held Accountable For The Ruthven Occupation Based On Established University Procedures.

The Individual Plaintiffs all participated in the occupation of the Ruthven Building on November 17, 2023, which they do not dispute. Compl. ¶¶ 112–128, PageID.22–25. Despite describing their actions as an anodyne "sit-in," they acknowledge that a large group of students occupied the building, that numerous law enforcement agencies were dispatched to address the incident, and that dozens of students were arrested and cited. *Id.* ¶¶ 118–120, PageID.23. Multiple individuals have faced criminal charges for conduct during the incident, including resisting and obstructing law enforcement officers and attempting to disarm an officer.[2]

Omar Torres, who was hired by the University to assist with student accountability proceedings, filed disciplinary complaints against the students involved, including the Individual Plaintiffs. *See id.* ¶¶ 140–145, PageID.27–28;

---

[2] *See* Eilene Koo & Marissa Corsi, *Washtenaw County Prosecutor's Office Authorizes Criminal Charges Against 4 Individuals For Nov. 17 Protest*, Mich. Daily (May 16, 2024), https://www.michigandaily.com/news/news-briefs/washtenaw-county-prosecutors-office-authorizes-criminal-charges-against-four-individuals-for-nov-17-protests/ [https://perma.cc/8FZX-QBPL].

Exs. E–J. Those complaints stated that the respondents "entered the Ruthven Administrative Building at a time when the building was locked" and defied not only "a clear directive to leave University-controlled premises," but also a "succession of additional warnings to leave the facility" from the University Police Department. *See, e.g.*, Ex. E. The Individual Plaintiffs opted for arbitration before a student panel. Compl. ¶ 149, PageID.29. The panel found them not responsible, which was appealed. *Id.* ¶¶ 151–154, PageID.29–30. After receipt of the appeals board recommendation, Vice President Harmon found the Individual Plaintiffs responsible for violating Provision Q only. *Id.* ¶ 156, PageID.30; Ex. L. He imposed the lightest sanction possible: a formal reprimand. Compl. ¶ 157, PageID.30.

## C.    SAFE Faced Accountability For Repeated Misconduct.

SAFE, a pro-Palestinian student organization, has also faced accountability proceedings for multiple *Standards* violations occurring over a span of more than five months. Ex. K. The University employed Stephanie Jackson to assist with these proceedings. Compl. ¶ 186, PageID.35. In a disciplinary complaint filed on October 31, 2024, SAFE was charged with violations including failure to obtain required permits for a "die-in"[3] demonstration during the "Festifall" event in August 2024 and for another campus event in October 2024. *Id.* ¶ 187, PageID.35; Ex. K. The

---

[3] The "die-in" involved participants lying on the ground in the Diag as the names of individuals killed in the conflict were read. Compl. ¶ 202, PageID.38.

complaint sought a two-to-four-year suspension of SAFE. Compl. ¶ 188, PageID.35–36; Ex. K at 10. The Complaint does not allege the outcome of the proceeding or any sanction imposed.

Although the Complaint discusses this disciplinary complaint extensively, Compl. ¶¶ 187–222, PageID.35–42, Plaintiffs neglect to mention that SAFE was also charged with violating § III.B.1 (Health and Safety) for "[h]ost[ing] and participat[ing] in an unwelcome, disruptive, threatening, and unsafe demonstration at the private residence of Regent Sarah Hubbard" in May 2024. Ex. K at 2; Ex. B. As alleged, SAFE "[t]respassed onto Regent Hubbard's front lawn"; "[s]howed up, uninvited, to the front door of Regent Hubbard's personal home by sending a member in a full face covering / mask to post demands on her door"; and "littered debris such as body bags, cement blocks, and baby dolls" with "red paint on the body bags and baby dolls . . . to look like blood." Ex. K at 8–9.

**D.    Plaintiffs Filed This Lawsuit.**

On December 20, 2024, Plaintiffs filed this lawsuit. They bring three causes of action pursuant to 42 U.S.C. § 1983, alleging violations of their rights to freedom of expression, procedural due process, and equal protection. Compl. ¶¶ 232–268, PageID.44–51. Plaintiffs seek not only to undo the challenged proceedings and outcomes but also to require sweeping changes to University policies and procedures that go far beyond what is constitutionally required or permissible. For example,

they demand that the Court bar the University from "[i]nitiating or conducting disciplinary proceedings where an executive officer is the final adjudicator of complaints brought on behalf of the University against a student or a student organization" and from "[r]equiring permits for student organizations to engage in speech activities on the Diag." *Id.* ¶ 269, PageID.52. Plaintiffs also demand compensatory and punitive damages from the Individual Defendants. *Id.*, PageID.53.

## STANDARDS OF REVIEW

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). The allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

A motion to strike a complaint's class allegations may be brought at any point in the litigation, consistent with Rule 23's directive that "the court must determine by order whether to certify the action as a class action" at "an early practicable time after a person sues." Fed. R. Civ. P. 23(c)(1)(A); *Pilgrim v. Universal Health Card,*

*LLC*, 660 F.3d 943, 949 (6th Cir. 2011). "When the defendant challenges class certification based solely on the allegations in the complaint, the standard is the same as that applied in deciding a motion to dismiss under Rule 12(b)(6)." *Green v. Liberty Ins. Corp.*, No. 15-cv-10434, 2016 WL 1259110, at *2 (E.D. Mich. Mar. 30, 2016) (ellipsis and quotation marks omitted).

## ARGUMENT

### I.   Plaintiffs Fail To State A Claim Under The First Amendment.

Plaintiffs assert a single count for violation of their First Amendment rights to speech, petition, and assembly. Compl. ¶¶ 236–237, PageID.45. Within this single count, Plaintiffs appear to pursue multiple theories: (1) the "permitting requirements" imposed on SAFE were an unlawful prior restraint, *id.* ¶¶ 4, 196, 237–238, PageID.3–4, 37, 45; (2) Plaintiffs suffered retaliation for protected expression, *id.* ¶¶ 2–3, 236, 239–242, PageID.3, 45–46; and (3) content- or viewpoint-based restrictions burdened their First Amendment rights, *id.* ¶¶ 236–237, 239–242, PageID.45–46. None of their theories is adequately pleaded.

### A.   The Complaint Does Not Allege An Unlawful Prior Restraint.

SAFE contends that the University imposed on the organization "permitting requirements that do not exist" because of SAFE's viewpoint, *id.* ¶ 241, PageID.46, but the Complaint does not state a claim. Not every policy that restrains speech before it occurs is subject to the "more rigorous scrutiny" applied to "prior

restraints." *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 434 (6th Cir. 2009). Instead, content-neutral permit requirements for spaces like the Diag operate like "time, place, and manner regulation[s]." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002); *see Lowery*, 586 F.3d at 434. The standard for such regulations asks whether they are "content-neutral, narrowly tailored to serve a significant governmental interest, . . . leave open ample alternatives for communication," and avoid delegating "overly broad licensing discretion to official decision-makers." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697–98 (6th Cir. 2020).

Here, SAFE was charged with violating the University's publicly available Diag Policy—the same policy that applies to *all* RSOs—when it staged a die-in in the same location and at the same time as another University event, which had already acquired a permit for that place and time. *See supra* at 5; Exs. D, K. The Diag Policy is a quintessentially valid time, place, and manner restriction. It does not establish access based on the content or viewpoint of speech. It is narrowly tailored to serve the University's significant safety and operational interests in "coordinat[ing] multiple uses of limited space; to assur[ing] preservation of . . . facilities[;] [and] prevent[ing] dangerous, unlawful, or impermissible" uses. *Thomas*, 534 U.S. at 322. It sets forth clear standards for how to reserve the space, without overly broad discretion. And there are ample alternatives for student expression on the University's campus, illustrated by the "decades" of expressive

11

activity detailed in the Complaint. *See* Compl. ¶ 60, PageID.12.

Similar permitting requirements have been upheld time after time because "allow[ing] unregulated access to all comers could easily reduce rather than enlarge" a public space's "utility as a forum for speech." *Thomas*, 534 U.S. at 322 (quotation marks omitted) (upholding municipal park ordinance). Courts have readily applied this principle to universities' regulation of their public spaces, recognizing that permit requirements protect universities' significant interests in promoting public safety, "minimizing the disruption of the educational setting," and "fostering . . . a diversity of uses of University resources." *Bowman v. White*, 444 F.3d 967, 980–81 (8th Cir. 2006). So too here. SAFE faces consequences for violating a valid time, place, and manner restriction, and the Complaint's efforts to allege an unlawful "prior restraint" based on that simple reality are unavailing.

## B.   The Complaint Does Not Allege First Amendment Retaliation.

Plaintiffs likewise fail to plausibly allege that the University retaliated against them for engaging in activities protected by the First Amendment. Compl. ¶¶ 239–240, PageID.45–46. To state this claim, Plaintiffs must plausibly allege that they "(1) engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against [them] that would deter a person of ordinary firmness from continuing to engage in that conduct; [and] (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by

[their] protected conduct." *Dixon v. Univ. of Toledo*, 702 F.3d 269, 274 (6th Cir. 2012) (quotation marks omitted). Pleading this causal connection requires "both (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Bright v. Gallia Cnty.*, 753 F.3d 639, 653 (6th Cir. 2014) (quotation marks omitted). "[S]pecific, nonconclusory allegations" of the link are required. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (quotation marks omitted).

Plaintiffs appear to allege two adverse actions: the formal reprimand issued to the Ruthven respondents and the complaint filed against SAFE. Compl. ¶¶ 157, 187–188, PageID.30, 35–36. Neither sustains their claim, and Plaintiffs fail to allege that the purported adverse actions were motivated by anything other than the University's belief that Plaintiffs blatantly violated University policy.

**Individual Plaintiffs.** To start, the Individual Plaintiffs do not allege a cognizable adverse action. "[A]n official action will be deemed 'adverse' only if it could 'deter a person of ordinary firmness' from the exercise of the right at stake.'" *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999)). This is an objective test. *Whiting v. City of Athens*, 699 F. Supp. 3d 652, 660 (E.D. Tenn. 2023), *aff'd*, No. 23-cv-6082, 2024 WL 3537651 (6th Cir. July 25, 2024). The reprimands issued to the Individual

Plaintiffs fall short of meeting it, as numerous courts have found in analogous circumstances. *See, e.g.*, *Sensabaugh v. Halliburton*, 937 F.3d 621, 629 (6th Cir. 2019) (holding that letters directing school employee to take certain action to avoid discipline and suspending him with pay were not adverse actions); *Bhattacharya v. Murray*, 93 F.4th 675, 689 (4th Cir.) (holding that "Concern Card," which monitored behavior and could prompt review by school's standards committee, was not adverse action), *cert. denied*, 145 S. Ct. 443 (2024); *see generally Whiting*, 699 F. Supp. 3d at 660 (explaining that *de minimis* injury cannot sustain retaliation claim).

In all events, the Complaint lacks plausible allegations that Defendants Torres or Harmon were "motivated in substantial part by a desire to punish [Plaintiffs] for exercise of a constitutional right." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (quotation marks omitted). Plaintiffs baldly claim that "[n]o such measures are known to have currently been taken" against students "engaging in speech and other expressive activities on any other issue," Compl. ¶ 75, PageID.16, but Plaintiffs do not and cannot allege they are privy to other students' disciplinary proceedings. *See* 20 U.S.C. § 1232g. Here, the Individual Plaintiffs faced accountability for defying law enforcement warnings, forcibly entering and occupying an administration building despite the presence of law enforcement officers, and defying law enforcement warnings to leave. Plaintiffs do not and cannot allege that any students who engaged in remotely comparable conduct were treated

more favorably because of their viewpoint. Undercutting any inference of viewpoint discrimination, the Complaint acknowledges other significant pro-Palestinian, pro-divestment activity that did *not* result in any consequences for the students involved. Compl. ¶ 116, PageID.23. "[C]onclusory allegations of retaliatory motive unsupported by material facts will not be sufficient," yet that is all Plaintiffs offer here. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quotation marks omitted); *see also McMillan v. Fielding*, 136 F. App'x 818, 821 (6th Cir. 2005).

**SAFE.** As for SAFE's retaliation claim, while the Complaint alleges that the disciplinary complaint sought to suspend the organization, it lacks allegations as to any discipline actually imposed. What's more, the Complaint lacks plausible allegations of the requisite causation. Plaintiffs vaguely assert that the University's actions were "motivated by something other than any alleged disruption of the [Festifall] event," namely the "pro-Palestine viewpoint that Plaintiff SAFE advocates." Compl. ¶ 208, PageID.39. But SAFE faced accountability under generally applicable and viewpoint-neutral University policies governing student organization conduct, including serious threats to health and safety. Once again, bald claims that the University targeted SAFE for its viewpoint rather than its conduct cannot sustain the extraordinary and unfounded assertion—belied by the extensive pro-Palestinian expressive activity by thousands of community members during the same time period at issue—that the University acted with retaliatory animus here.

15

*See Harbin-Bey*, 420 F.3d at 580.

    **C.**    **Any Other First Amendment Theories Fail On The Same Grounds.**

Nor does the Complaint plausibly allege a standalone claim for content- or viewpoint-based discrimination. Plaintiffs cannot identify any relevant policy that discriminates based on either content or viewpoint. Without a facial challenge, Plaintiffs instead contend that policies were applied to them in ways that violate their First Amendment rights. Compl. ¶¶ 239–242, PageID.45–46. In this context, "[r]etaliation and discrimination are two names for the same concept here: both involve taking an adverse action . . . because of the content or viewpoint embodied in their speech." *Sullivan v. Ohio State Univ.*, No. 23-cv-3174, __ F. Supp. 3d __, 2025 WL 828966, at *4 & n.1 (S.D. Ohio Jan. 31, 2025). Any such claim thus fails for the same reasons articulated above, namely that the Complaint does not allege any unlawful retaliation or prior restraint. The same is true for any theories related to petition and assembly rights. *See Prows v. City of Oxford*, No. 22-cv-693, 2023 WL 3868266, at *13 (S.D. Ohio June 7, 2023) ("Courts typically evaluate free speech, assembly and petition claims under the same analysis.") (citation omitted).

**II.**    **The Complaint Fails To State A Due Process Claim.**

Plaintiffs do not plausibly allege that they were "deprived of a protected liberty or property interest" "without adequate procedural protections." *Hasanaj v. Detroit Pub. Schs. Cmty. Dist.*, 35 F.4th 437, 447 (6th Cir. 2022).

### A.   The Individual Plaintiffs Do Not State A Claim.

The Individual Plaintiffs fall far short of meeting their pleading burden. They allege only that they "possessed important liberty and property interests in their status as students," Compl. ¶ 130, PageID.26—without specifying those interests or alleging how they were impaired. This bare statement does not suffice under Rule 12(b)(6), *Iqbal*, 556 U.S. at 678, and the circumstances alleged here do not involve a protected interest or establish a deprivation of any process due.

The Sixth Circuit requires minimal due process protections for students before they are issued "significant disciplinary decisions." *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017). Courts apply this standard to severe sanctions like expulsion and suspension because such actions can threaten a putative liberty or property interest in continuing or completing post-secondary education. *See Jaksa v. Regents of Univ. of Mich.*, 597 F. Supp. 1245, 1247 (E.D. Mich. 1984) (one-term suspension), *aff'd*, 787 F.2d 590, 1986 WL 16012 (6th Cir. 1986) (unpublished table decision); *see also, e.g.*, *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 631–32 (6th Cir. 2005) (expulsion); *Univ. of Cincinnati*, 872 F.3d at 398–99 (year-long suspension). But "not every use or even misuse of school discipline implicates the Fourteenth Amendment." *Dickens ex rel. Dickens v. Johnson Cnty. Bd. of Educ.*, 661 F. Supp. 155, 157 (E.D. Tenn. 1987). Minor disciplinary actions do not have a constitutional dimension. *See, e.g.*, *Laney v. Farley*, 501 F.3d 577, 582 (6th Cir. 2007) (concluding

that in-school suspensions do not implicate any property interest in a public education because they do not "exclude the student from school"); *see also Goss v. Lopez*, 419 U.S. 565, 576 (1975) (stating that *de minimis* injuries to a property interest are not entitled to procedural due process protection). The formal reprimands challenged here—which represent the lightest sanction available under the *Statement* and serve merely to warn students that future violations may yield consequences—do not meet that threshold. Indeed, multiple Plaintiffs graduated in 2024, and none alleges that they were impeded by these reprimands. Compl. ¶¶ 12, 14, PageID.5.

At any rate, the Complaint fails to allege that the Individual Plaintiffs were denied due process. Due process involves two basic requirements: "(1) notice, and (2) an opportunity to be heard." *Flaim*, 418 F.3d at 634; *see Jaksa*, 597 F. Supp. at 1254. The Individual Plaintiffs received these protections under the comprehensive process established by the *Statement*. The disciplinary complaints explained the charges and key evidence; the Individual Defendants were able to confront the evidence against them and present their defense at the arbitration hearing and on appeal; and there are no plausible allegations of bias by the decision-makers. *See, e.g.*, Ex. E; *see* Compl. ¶¶ 141–144, 151–157, PageID.27–30. That process was more than adequate. *See, e.g.*, *Jaksa*, 597 F. Supp. at 1249 (concluding student received "more procedural protection than the due process clause requires" where there was notice and hearing); *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1082 (S.D. Ohio

2017) (concluding student facing sexual misconduct allegations had sufficient process where he did "not allege[] that he did not receive notice or a hearing"), *on reconsideration in part*, 323 F. Supp. 3d 962 (S.D. Ohio 2018).

Plaintiffs resort to arguing that the University failed to follow its own policies and procedures. *See, e.g.*, Compl. ¶¶ 145–147, 158–168, PageID.28–29, 31–32. But it is well-established that a university's departure from its own disciplinary policies and procedures does not by itself amount to a due process deprivation. *Flaim*, 418 F.3d at 640. For example, although Plaintiffs allege that the Ruthven complaints were issued after the six-month timeline in the *Statement*, Compl. ¶ 145, PageID.28, they acknowledge that the policy expressly permits extensions, *see id.* ¶ 82 n.4, PageID.17; Ex. A at 5. Similarly, Plaintiffs cannot show that a decision by the University to pursue a complaint violated any written policy or substantively impacted student rights—much less in a way implicating due process. Additionally, despite allegations that the Individual Plaintiffs were deprived of adaptable conflict resolution, Compl. ¶ 148, PageID.29, they fail to mention that *both* sides to a student disciplinary proceeding must agree to that process under the *Statement*, Ex. A at 6.

Plaintiffs also criticize Vice President Harmon's decision to rely on the list of students who were issued trespass warnings for refusing to leave the Ruthven Building in November 2023. Compl. ¶ 159, PageID.31; Ex. L. Yet Plaintiffs do not and cannot allege they were unaware that they received trespass warnings that day,

or that they were unaware that their names were on the trespass warning list prior to any hearing. In short, they had an opportunity to rebut that evidence if the facts supported doing so. Moreover, "[i]t is not the role of the federal courts to set aside decisions of school administrators" based on disagreement with their "wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *see also, e.g.*, *Ohio State Univ.*, 239 F. Supp. 3d at 1082. These procedural criticisms thus fail to state a claim.

### B.   SAFE's Theories Are Meritless.

SAFE's procedural due process claims are weaker still. First, as noted above, the pleading does not allege any final deprivation to sustain this claim—only the filing of a disciplinary complaint. Compl. ¶¶ 180–188, PageID.34–36. Second, the Complaint makes only the conclusory allegation that SAFE has "liberty and property interests" as a "registered and recognized student organization." Compl. ¶ 131, PageID.26. That does not suffice: SAFE cannot demonstrate a protected property or liberty interest in avoiding a temporary suspension of RSO status. *See id.* ¶ 188, PageID.35–36. Third, even assuming such an interest, the organization was provided with more than sufficient process to the limited extent its disciplinary proceedings are alleged. Specifically, at the stage of the proceedings alleged in the Complaint, SAFE had received full notice of the charges in the disciplinary complaint, which was all that was required. *See Flaim*, 418 F.3d at 634.

**III.   The Complaint Fails To State An Equal Protection Claim.**

Nor does the Complaint state an equal protection violation. "The threshold element of an equal protection claim is disparate treatment[.]" *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Plaintiffs do not claim membership in a suspect class, which constrains them to a "class-of-one" theory. Under that theory, Plaintiffs must plausibly allege that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiffs "must be 'similarly situated' to a comparator in 'all relevant respects.'" *Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (citation omitted).

The Complaint is devoid of allegations regarding a comparator "similarly situated" to Plaintiffs "in all relevant respects." It contends that "other students and organizations who espouse opposing viewpoints or who speak on other issues" receive different treatment. Compl. ¶ 264, PageID.50. Yet the pleading conspicuously omits allegations that those students are proper comparators for an equal protection analysis, which would mean, at minimum, that they engaged in the same conduct. For the Individual Plaintiffs, such conduct includes breaking into a locked University building and defying multiple directives from law enforcement officials to leave; and for SAFE, that conduct includes hosting a protest during a

busy and congested campus event after being specifically advised by administrators that the space was already reserved and they lacked permission to do so; lying on the ground and impeding pedestrian traffic during that event; selling food on University property against University rules; and harassing a University Regent at her private residence by trespassing and vandalizing her property. Exs. E, K. The Complaint's bare comparison cannot sustain this claim. *See, e.g.*, *Smith v. Bauer*, No. 22-cv-382, 2023 WL 2706252, at *7 (W.D. Mich. Mar. 13, 2023).

The Complaint's single allegation about pro-Israel counter-protesters at Festifall cannot save this claim. The Complaint alleges those individuals were not disciplined despite lacking a permit. *See* Compl. ¶ 209, PageID.39. But the Complaint does not contend that the actions of these counter-protesters were sufficiently similar to sustain an equal protection claim. For example, Plaintiffs do not allege that the counter-protesters similarly announced that they would hold a die-in on the Diag during Festifall, *id.* ¶ 192, PageID.36; that they received and then defied instructions from University officials prior to the event, Ex. K at 5; that they laid on the ground during the event, Compl. ¶ 202, PageID.38; that they obstructed or impeded traffic, Ex. K at 5–6; or that they disregarded repeated warnings by administrators and directives by law enforcement officials. In fact, the *only* commonality is that these alleged counter-protesters were also in attendance at a popular campus-wide event. Ex. K at 5–6; Compl. ¶ 191, PageID.36. Without more,

this amounts to an allegation that the mere presence of counter-protestors or others engaging in expressive activity makes for similarly situated comparators—a proposition that courts have rejected time and again. *See, e.g.*, *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1152 (6th Cir. 2022); *see also Marcavage v. City of Philadelphia*, 481 F. App'x 742, 749 (3d Cir. 2012) (protestor not similarly situated because plaintiff presented greater "potential for disruption").

Nor have Plaintiffs pointed to any University policy or rule that facially discriminates on any basis. They claim that the University "adopted policies that violate Plaintiffs' equal protection rights," Compl. ¶ 260, PageID.49, but all the policies implicated by the Complaint are content- and viewpoint-neutral on their face. *See* Exs. A–D. These are rules that apply equally to all students or student organizations. Without any plausible allegations of a facially discriminatory policy or a similarly situated comparator, this equal protection claim fails.

## IV.   At Minimum, Damages Claims Against The Individual Defendants Must Be Dismissed For Multiple Reasons.

In all events, claims for money damages against the Individual Defendants must be dismissed as follows based on personal involvement and immunities.

***Lack of Personal Involvement.*** The Complaint does not allege President Ono's personal involvement in the purported constitutional violations, requiring dismissal of the damages claims against him in his individual capacity. *Sears v. Washington*, 655 F. Supp. 3d 624, 627–28 (E.D. Mich. 2023). The Complaint's *only*

allegation regarding President Ono's involvement states that he "submitted a Request for Action to Defendant REGENTS to make changes to the *Statement*." Compl. ¶¶ 103–104, PageID.20. But that request and the resulting changes to the *Statement* are immaterial to the constitutional violations alleged: the Complaint itself acknowledges that none of the challenged accountability proceedings was based on the updated version of the *Statement*. *See id.* ¶¶ 134–147, PageID.26–29. Because President Ono had no alleged involvement in those proceedings, the damages claims against him in his individual capacity must be dismissed. *See, e.g.*, *Crisp v. Neel-Wilson*, No. 15-cv-1265, 2015 WL 5882126, at *1 (S.D. Ohio Oct. 7, 2015).

***Sovereign Immunity.*** To the extent Plaintiffs seek money damages from the Individual Defendants in their official capacities, *see* Compl. ¶¶ 246, 257, 268; *id.* at 53, PageID.47, 49, 50–51, 53, the Eleventh Amendment bars such claims under sovereign immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The University and its officers are arms of the state and thus entitled to such immunity. *See Est. of Ritter ex rel. Ritter v. Univ. of Mich.*, 851 F.2d 846, 851 (6th Cir. 1988). As University employees, *see* Compl. ¶¶ 26, 30, 35, 41, PageID.7–9, the Individual Defendants are equally entitled to that immunity when sued in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This bar remains in effect when State officials are sued for damages in their official capacity.").

***Qualified Immunity.*** At the very least, the Individual Defendants are entitled

to qualified immunity to the extent they are sued in their individual capacities for money damages. Qualified immunity applies to "administrators of [a] public university." *Cunningham v. Blackwell*, 41 F.4th 530, 536 (6th Cir. 2022). It also applies to contractors providing ongoing services to public entities under circumstances like these. *See Filarsky v. Delia*, 566 U.S. 377, 388–89 (2012). Qualified immunity protects "officials from civil liability in the performance of their duties so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016) (quotation marks omitted). Plaintiffs bear the burden to show that Defendants are *not* entitled to qualified immunity, and, at this stage, must plausibly allege facts showing "(1) that [Defendants] violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Kerchen v. Univ. of Michigan*, 100 F.4th 751, 763 (6th Cir. 2024) (citation omitted). "[C]learly established law should not be defined at a high level of generality" but instead "must be particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks omitted). Here, no *clearly established* law prohibits the challenged conduct.

Starting with the First Amendment claim, it is in fact clearly established that state entities can enforce content-neutral time, place, and manner restrictions. *See, e.g.*, *Nylen v. City of Grand Rapids*, 475 F. Supp. 3d 744, 756 (W.D. Mich. 2019).

There is also no clearly established law that a university's application of content-neutral policies and procedures to misconduct—resulting either in reprimands of individual students or a temporary suspension of a student organization—can support a First Amendment retaliation claim. *See Reichle v. Howards*, 566 U.S. 658, 665 (2012) (plaintiffs must demonstrate that a "more specific right to be free from" the retaliatory act alleged is clearly established).

For procedural due process, neither the Supreme Court nor the Sixth Circuit has clearly established that disciplinary proceedings like these—involving, *at most*, formal reprimands for individual students and a disciplinary suspension for a student organization—implicate protectable property rights. Nor is there a clearly established liberty interest implicated by the facts alleged. *See Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 727 (E.D. Va. 2015) (holding protected liberty interest in context of university disciplinary hearings was not clearly established). Nor does any clearly established law establish the procedural protections Plaintiffs claim. *Cf. Carney v. Univ. of Akron*, No. 15-cv-2309, 2016 WL 4036726, at *14 (N.D. Ohio July 28, 2016); *see also Gischel v. Univ. of Cincinnati*, 302 F. Supp. 3d 961, 979 (S.D. Ohio 2018) ("The law regarding what process is due in the student disciplinary context is evolving."), *on reconsideration in part*, No. 17-cv-475, 2018 WL 9944971 (S.D. Ohio June 26, 2018).

Finally, no law clearly establishes a class-of-one equal protection claim in the

context of university disciplinary proceedings. Such specificity is required to overcome qualified immunity. *See Lunini v. Grayeb*, 395 F.3d 761, 771 (7th Cir. 2005) ("[I]t would be difficult to charge defendants with notice of a clearly established constitutional right [under a class-of-one theory] based on [*Olech*'s] open-ended pronouncement in a case arising under completely different facts.").

## V.    The Complaint's Class Allegations Should Be Stricken.

In the event any claim survives, it cannot be maintained on a class basis. Plaintiffs seek to represent all students who publicly advocated for the University of Michigan to divest from Israel and who, after October 7, 2023, faced certain types of accountability proceedings. Compl. ¶ 224, PageID.42. To maintain a class action, Plaintiffs must first satisfy "each of the four prerequisites under Rule 23(a)." *Pilgrim*, 660 F.3d at 945. Plaintiffs must then satisfy "the prerequisites of one of the three types of class actions provided for by Rule 23(b)." *Id.* at 945–46. A failure on either front "dooms the class," including on a pre-discovery motion to strike class allegations. *Id.* at 946. Here, even on the face of the pleadings, the proposed class is fatally flawed because it lacks numerosity, predominance, and ascertainability.[4]

---

[4] Although striking class allegations is "a tool to be used sparingly," courts do so where, as here, the allegations are "legally impermissible" such that no discovery or additional evidence would remedy their defects. *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 n.1 (E.D. Mich. 2015); *see also, e.g.*, *Hutt v. Greenix Pest Control, LLC*, No. 20-cv-1108, 2023 WL 2726357, at *3–4 (S.D. Ohio Mar. 31, 2023); *Jones v. Lubrizol Advanced Materials, Inc.*, 583 F. Supp. 3d 1045, 1058 (N.D.

## A.  The Class Is Insufficiently Numerous.

Under Rule 23(a)(1), Plaintiffs "must demonstrate that the putative class is 'so numerous that joinder of all members is impracticable.'" *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005) (quoting Fed. R. Civ. P. 23(a)(1)). "The numerosity requirement requires examination of the specific facts of each case[.]" *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). When a class's size reaches "substantial proportions," courts may find Rule 23(a)(1) satisfied "by the numbers alone." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (class of 15,000 to 120,000 people). Regardless, "[i]mpracticability of joinder must be positively shown, and cannot be speculative." *Golden*, 404 F.3d at 965–66 (quoting *McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 389 (S.D. Ohio 2001)).

Here, the Complaint asserts only that the class includes "more than 35 persons." Compl. ¶ 225, PageID.42. Courts routinely hold that proposed classes of this size (or even larger) are insufficiently numerous to warrant class certification. *See, e.g.*, *O'Neil v. Appel*, 165 F.R.D. 479, 490 (W.D. Mich. 1996) (56 plaintiffs).[5]

---

Ohio 2022); *Oom v. Michaels Cos.*, No. 16-cv-257, 2017 WL 3048540, at *7 (W.D. Mich. July 19, 2017); *Green*, 2016 WL 1259110, at *6; *Schilling v. Kenton Cnty.*, No. 10-cv-143, 2011 WL 293759, at *11 (E.D. Ky. Jan. 27, 2011).

[5] *See also, e.g.*, *Garza v. Fusion Indus., LLC*, No. 20-cv-336, 2023 WL 6276713, at *4 (W.D. Okla. Sept. 26, 2023) (30 to 40 plaintiffs); *Day v. Whirlpool Corp.*, No. 13-cv-02164, 2014 WL 12461378, at *4 (W.D. Ark. Dec. 3, 2014) (40 plaintiffs); *In re Park Cent. Glob. Litig.*, No. 09-cv-765, 2014 WL 4261950, at *4 (N.D. Tex. Aug. 25, 2014) (112 to 130 plaintiffs); *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995) (200 potential and 39 likely plaintiffs).

Nor does the Complaint adequately allege the impracticability of joinder here. This standard "consider[s] 'ease of identifying members and determining addresses, ease of service on members if joined, [and] geographical dispersion' among other things." *Turnage v. Norfolk S. Corp.*, 307 F. App'x 918, 921 (6th Cir. 2009) (citation omitted). Plaintiffs offer only a conclusory allegation restating the legal standard, devoid of any relevant facts. Compl. ¶ 225, PageID.42. This type of allegation is plainly insufficient to satisfy Rule 23(a). *See O'Neil*, 165 F.R.D. at 489. Tellingly, the Complaint does not allege that the geographical location of the putative class members or nature of the harm would make joinder impracticable. *See Turnage*, 307 F. App'x at 921. If anything, the varied harms that members of the proposed class are alleged to have experienced—discussed in more detail below—mean that a class action would be *more* impracticable than the alternative of individual or joined suits. *See, e.g.*, *Sullivan v. City of Berkeley*, 328 F.R.D. 352, 355 (N.D. Cal. 2018).

**B.    Individualized Issues Defeat Predominance And Ascertainability.**

On the face of the Complaint, the class claims and definition implicate far too many individualized questions to allow for certification. Plaintiffs seek class-wide money damages and acknowledge that they must therefore satisfy Rule 23(b)(3) requirements. *See* Compl. ¶ 231, PageID.43–44; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) ("[I]ndividualized monetary claims belong in Rule 23(b)(3)."). This requires showing that "the questions of law or fact common to class

members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry requires assessing "the legal or factual questions that qualify each class member's case as a genuine controversy," and whether those questions are "subject to generalized proof, and thus applicable to the class as a whole." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017) (quotation marks omitted).

Plaintiffs' claims unavoidably implicate many "substantive issues that will control the outcome," but will not be subject to common proof. *Id.* (quotation marks omitted). Plaintiffs do not seriously dispute this fact: the only common question they even allege is Defendants' supposed "failure to comply with due process," Compl. ¶ 227, PageID.43, meaning they do not even attempt to show predominance as to their First Amendment and equal protection claims. In reality, all three of their claims involve individualized inquiries that overwhelm any common questions.

Count I, alleging First Amendment violations, hinges on the particulars of a given student's expression, the defendant's response, and any causal connection and retaliatory animus—fact-intensive questions that multiple courts have found to preclude class treatment. *See, e.g.*, *Black Lives Matter, D.C. v. United States*, No. 20-cv-1469, 2025 WL 823903, at *17 (D.D.C. Mar. 14, 2025); *Gaddis v. Zanotti*, No. 19-cv-781, 2020 WL 6382020, at *5 (S.D. Ill. Oct. 30, 2020). Count II, alleging procedural due process violations, involves distinct merits questions for each

plaintiff about the consequences at issue and the notice and process afforded, particularly since the proposed class spans different accountability proceedings. *See Daskalea v. Washington Humane Soc'y*, 275 F.R.D. 346, 360–61, 369 (D.D.C. 2011); *Torres v. Goddard*, 314 F.R.D. 644, 660–62 (D. Ariz. 2010). And Count III, alleging equal protection violations, requires each plaintiff to establish disparate treatment as compared to other students similarly situated to that plaintiff in all relevant respects, an inherently individualized inquiry. *Cf. Hudson v. City of Chicago*, 242 F.R.D. 496, 509 (N.D. Ill. 2007).

Even the class definition requires individualized determinations that do not allow for an ascertainable class, independently precluding certification. Ascertainability is an implied requirement of Rule 23. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012). It demands a class "sufficiently definite . . . that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* at 538. A class definition must allow the court "to determine membership in the class without the need for individualized fact finding." *Crossroads Grp., LLC v. City of Cleveland Heights*, 346 F.R.D. 75, 83 (N.D. Ohio 2024); *see Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) (holding that where "the only way to distinguish between the two sets of individuals is to engage in individualized fact-finding, . . . [a] class definition [is] unsatisfactory").

Plaintiffs' proposed class definition does not meet these standards. First, it

requires the court to assess which students "publicly advocated for the University of Michigan to divest from Israel." Compl. ¶ 224, PageID.42. That task would involve adjudicating the advocacy activities of all students subject to disciplinary proceedings at the University in the relevant time period and making case-by-case judgments about the nature of each student's political stance. The class definition also includes students allegedly "required . . . to disprove the actions alleged against them by the University or its agents." *Id*. This would require the Court to make individualized determinations—about how the burden of proof was understood and applied in individual proceedings—just to decide who belongs in the class. Because Plaintiffs' class allegations raise unavoidable individualized issues, both in the class claims and in the class definition, Plaintiffs' class allegations are facially deficient.

## CONCLUSION

Defendants respectfully request that the Court either dismiss the Complaint in its entirety, or, if any claims remain, strike the class action allegations.

Dated: April 1, 2025

Brian M. Schwartz (P69018)
Miller, Canfield, Paddock
and Stone, P.L.C.
150 W. Jefferson, Ste. 2500
Detroit, MI 48226
(313) 963-6420
schwartzb@millercanfield.com

Respectfully submitted,
/s/ Lauren J. Hartz
Lauren J. Hartz (D.C. Bar No. 1029864)
Ishan Bhabha (D.C. Bar No. 1015673)
Jenner & Block LLP
1099 New York Avenue, NW Suite 900
Washington, DC 20001-4412
+1 202 639 6000
lhartz@jenner.com
ibhabha@jenner.com

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

NORA HILGART-GRIFF et al.,                )
                                          )
                 Plaintiffs,              )      Case No. 2:24-cv-13425
                                          )
        v.                                )      Hon. Laurie J. Michelson
                                          )      Mag. Elizabeth A. Stafford
REGENTS OF THE UNIVERSITY OF              )
MICHIGAN et al.,                          )
                                          )
                 Defendants.              )

## BRIEF FORMAT CERTIFICATION FORM

I, Lauren J. Hartz, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☑ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☑ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☑ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☑ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☑ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☑ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☑ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

Dated: April 1, 2025                    /s/ Lauren J. Hartz

33

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1, 2025, I electronically filed the foregoing Defendants' Motion To Dismiss The Complaint Or, In The Alternative, To Strike Plaintiffs' Class Allegations, with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

By: /s/ Lauren J. Hartz