# EXHIBIT L

**Appeals Board Report**
UM Statement of Student Rights and Responsibilities

TO:  Vice President For Student Life

FROM:  **University of Michigan Appeals Board**
Presidential Appointee:
Faculty Senate Appointee:
CSG Appointee:

Cc:  Dr. Erik Wessel, Director – Office of Student Conflict Resolution

SUBJECT:  Appeal Filed in Case # 01186-2024     DATE:  September 29, 2024

The Appeals Board met on 9/26/24 from 3:00pm to 5:30pm, to consider the appeal filed by Mr. Omar Estrada Torres on behalf of the University of Michigan, under the University of Michigan *Statement of Student Rights and Responsibilities* (the "*Statement*").  As part of our review, we learned that the Respondents are reported to have violated *Statement* sections:

N. <u>Obstructing or disrupting classes, research projects, or other activities or programs of the University; or obstructing access to University facilities, property, or programs</u> (except for behavior that is protected by the University's policy on Freedom of Speech and Artistic Expression).

Q. <u>Failing to comply with lawful requests to leave a University controlled premises.</u>  1. From police or security officers; or 2. From University Officials acting reasonably within their official capacities, who identify themselves and their role.

**Specifically, the Complainant, reported that the Respondents engaged in the following behavior summarized as follows in the Notice of Allegation:**

"As alleged, on November 17th, 2023 at approximately 3:58PM, individuals in student status entered the Ruthven Administrative Building at a time when the building was locked. After the students gained entry to the building, they gained access to and remained in the Rotunda, as well as the President's Office. Based on video evidence of the incident (as provided by the University of Michigan Police Department ("UM Police Department"), students were provided a clear directive to leave University-controlled premises. A succession of additional warnings to leave the facility was communicated by the UM Police Department. Students were informed that failure to do so would result in arrest and citation for trespass."

**The Appeals Board was convened to consider the following grounds for appeal available under the Policy and asserted by the Complainant:**

- Proper procedures were not followed;
- The evidence does not support the findings.

**In preparation for the Appeal, the Appeals Board received and reviewed the following documents**:

- OSCR Evidence File, containing recordings of the mediation session;
- Copy of the original complaint;
- Videographic/photographic evidence from November 17, 2023;
- Respondents' response (<24hr prior Appeals board meeting).
- Other related materials provided to it by OSCR.

In the course of our review, the Appeals Board carefully deliberated each of the concerns laid out in the written appeal from the Complainant.

After reviewing all of the information, the Appeals Board Committee **decided unanimously that there was NO SUPPORT for the appeal on either ground.**

With regard to Complainant's specific points, our committee has made the following findings that serve as the basis for the recommendations that follow:

**Appeal Rationale**
Summary of Appealing Party's Argument:

The Appealing Party argued that, had their witness been permitted to testify on all relevant matters, the Panel may have arrived at a materially different decision. The Appealing Party further argued that OSCR inadvertently failed to distribute a piece of evidence, the Citation List, to the parties ahead of the hearing, which prevented the Panel from considering it as evidence. The Appealing Party alleged also that the Respondents had been permitted to speak and ask questions on unrelated matters during the hearing, which was not properly addressed by the Resolution Officer.

Lastly, the Appealing Party alleged that the evidence presented to the Panel clearly showed the Respondents being warned to leave the premises, and that testimony from Ms. Oesterle would have supported that contention. The Appealing Party alleges that, but for the procedural errors, the evidence would have shown (or did show) a preponderance of evidence needed to find the Respondents responsible.

Appeals Board's Recommendation:
 1. Denying the appeal on the grounds that proper procedure not followed;
 2. Denying the appeal on grounds of evidence not clearly supporting the findings;
 3. Consider the implementation of the recommendations suggested below by the Appeals Board to address the deficiencies by revising its processes and improving the clarity of UM policies.

Rationale for Appeals Board's Recommendation:
After a thorough review and consideration of the appeal, the decision to deny both grounds is based on the following key factors:

   1. *Lack of New Evidence or Information:* The appeal does not present any new, relevant evidence or information that was not already available during the initial case report by the Resolution Officer. As per our guidelines, an appeal must introduce substantive new details that would potentially alter the outcome of the original decision. In the matter of evidence not clearly supporting findings, the appeal details the disallowance of Ms. Oesterle as a witness as the reason for lack of evidence. We believe that in fact, Ms. Oesterle could have provided testimony about general procedures, and could have provided detailed information about the citations that were received by UMPD following the events on November 17, 2023 without disobeying the instruction of the RO to not comment on what she saw from the EOC. In addition, in the appeal request, the list of individuals that received a citation was not clearly presented or authenticated, there is lack of information about how it was obtained, its chain of custody, etc. The evidence provided by the Complainant does not clearly support the allegations, which is why the Respondents were found Not Responsible by the Student Panel; this committee upholds that decision.

   2. *Consistency with Policy:* The original decision aligns with the established policies and standards. The decision-making body followed the appropriate protocols, and the outcome is consistent with ensuring fairness and equity in its application. All UM procedures related to

arbitration and conflict resolution were available and followed by all parties. **The principles of equity and fairness were maintained during the process for both parties.**

However, **the case reveals several significant flaws and problems** that affected procedural transparency and adequate communication of elements of the Statement of Student Rights and Responsibilities and the arbitration/conflict resolution procedures and normativity to all parties involved. These issues raise valid concerns about consistency and the overall integrity of the process. That said, based on the policies and protocols in effect at the time of the event, the outcome itself should not be affected, as the established guidelines were properly followed despite the noted communication and transparency shortcomings. The Appeals Board also identified the following areas of concern:

a. Inconsistent Case Management and Inadequate Communication of Existing Policies: The handling of the case has been marked by a lack of clear procedures or inconsistent application of existing protocols. Delays, conflicting communications, or failure to follow outlined timelines can undermine the students' trust in the process and question the impartiality of the administration. Moreover, it suggests that the university may not have established a reliable framework to address such cases effectively. For example, it is clearly the responsibility of the Resolution Coordinator to determine if an extension of the six month period is allowed; it is unclear if the reasons to extend the timeframe were clearly explained to the Respondents at the beginning of the process, and it was not obvious when reviewing the case files. We understand that multiple variables affect the standard time frames, but these exceptions should be listed, published, communicated to involved parties, and made part of the full record.

b. Lack of Transparency in the Selection of the Complainant: To allow a Complaint from The University of Michigan is a concerning precedent to set. Very few employees at the university have the authority to represent the University as a whole; if that were an option, there would not be a need for departments and offices to have clearly articulated names. A Complainant must be a student, faculty, or staff of the university, and may represent either themselves independently or the department for which they are employed, but do not automatically represent the University as a whole. The committee feels that Complaints should not be allowed to be filed on behalf of the University as a whole, but rather needs to have a department or office identified so it is clear which specific part of the university is filing the Complaint. In this case, Mr. Estrada Torres was employed by University Human Resources, and should have been required to represent that office in the proceedings. It is the university's prerogative to hire an individual to fulfill an identified need; we feel it is also the responsibility of the university to be transparent about their purpose during each step of the process.

c. Ambiguity in Student Rights and Responsibilities: One of the most concerning issues is the **unclear or poorly defined language in the university's documentation of Student Rights and Responsibilities**. Without precise definitions or clear examples of what constitutes violations or appropriate behavior, students may inadvertently breach policies or be unaware of their rights. Specifically, trespassing or occupying a UM building is not listed as an exception of the *First Amendment* in the Statement of Student Rights and Responsibilities. For this case (Complaint and Appeal), it was stated that Ruthven was closed and locked; because the facility was closed, nothing was being disrupted by the protestors. The way that Section N of the SSRR is written does not cover the unauthorized access of a closed and/or locked facility; it also does not mention the disruption of university operations (e.g. the unusually large number of police responding to the event on November 17, 2023). Without one of those elements, the Respondents did not seemingly violate this Section of the SSRR. This does not mean that the behavior is allowable; it means that there is a need for clarification of The Statement. This committee intends to submit a recommended amendment to the Statement during the next available cycle, to more clearly address this type of breach or disruption of university operations as

inappropriate, but until that change is approved, Respondents cannot be held responsible for a non-existent responsibility.

The arbitration, conflict resolution, and other processes were offered to all parties following U-M policies. The execution of these processes was also consistent, fair, and clear, which is why the Respondents were found Not Responsible; this committee upholds that decision. We strongly suggest that the areas of concern listed above be reviewed and addressed by the appropriate party.

3. <u>Failure to Demonstrate Procedural Error:</u> The appeal is based on multiple errors and factors related to **how the University managed and presented the case to the RO**. The appellant has not identified any procedural errors or deviations from established processes that could have affected the fairness or outcome of the original decision. **Our investigation confirms that all procedures were followed in accordance with the applicable policies.**

Most importantly, the Appeals Board identified the following areas where :

- The Complainant objected to Respondent witnesses based on relevance, and it was determined that those who were not present at the event on November 17, 2023, did not have relevance to the proceedings. The Complainant asserts that this was an error in procedures when applied to their witness, Ms. Teresa Oesterle.

- **When the Complainant's planned witness became unavailable, they could have been substituted for another officer who was on site, without issue.** Additionally, it was determined that Ms. Oesterle could participate in the proceedings as a witness, but only as an expert on procedures, authentication, record keeping, etc. rather than anything related to eyewitness accounts of the events at Ruthven on November 17, 2023. The decision to maintain consistency in the physical presence of witnesses was not an error made by the Resolution Officer.

- **It was the responsibility of the Complainant to find a different approach to providing relevant information that would have led to a preponderance of evidence, within the boundaries set forth by the Resolution Officer.** The decision by the Complainant to not change their approach does not constitute a procedural error on the part of the Resolution Officer or Student Panel.

- The Complainant also asserts that the failure to distribute the "Citation List" led to an important piece of evidence missing from the panel's deliberation. The panel made it clear that without copies of each citation for each respondent, they "could not in good conscience rule that all the Respondents were present and in violation". Distribution of this list could have been both a FERPA violation, and would not meet the criteria of individual citations that the panel required.

<u>Summary of Appeals Board Recommended Sanctions:</u>     **None**

Based on our review, we recommend that the Vice President for Student Life:

1. **Deny the appeal and affirm the decision of the student jury panel (RO).**
2. **Consider the implementation of the recommendations suggested by the Appeals Board to address the deficiencies by revising its processes and improving the clarity of UM policies.**

This hereby concludes the Appeals Board's involvement with this matter. In accordance with the Policy, the Vice President for Student Life may accept or modify the above recommendations.

_____

For Vice President for Student Life Use Only

I have reviewed the Appeals Board Report and related information. I have chosen to:

> Accept the recommendations of the Appeals Board as written. - As the VP for Student Life Designee, I accept the recommendations of the Appeal Board as written.
>
> Modify the recommendations of the Appeals Board as described in the attached document.

Vice President for Student Life                                    Date:   October 21, 2024

*[signature]*

On September 30th, 2024 the University Appeals Board submitted its recommendation. Per the Statement of Student Rights and Responsibilities, the Appeals Board is responsible to make a recommendation on the merits of the appeal to the Vice President for Student Life. Per the Statement, the Vice President for Student Life is responsible to review the appeal and "may accept of modify the recommendations." To come to a reasoned decision on the merits of the appeal I have considered the full case file, the appeal submitted on behalf of the University by Mr. Omar Torres, the response from the respondents collectively, and the recommendation from the appeals board.

**Summary of Complainant Appeal**

On September 4, 2024, a panel of five student arbiters concluded their review of evidence and testimony through the submission of the Resolution Officers report in case 01186-2024. In their determination, they did not find a preponderance of evidence was reached to conclude that respondents had violated University policies N or Q under the Statement, as was alleged. On September 13th, 2024, within the ten-day appeal window, the complainant elected to appeal the decision on the grounds that 1. proper procedures were not followed and 2. that the evidence clearly does not support the findings. These are summarized below:

1. **Procedures:** Appealing on the ground of procedural irregularity, the complainant brings forward three concerns. First, they allege that the Statement allows for any party to bring forward any information that is relevant to the case and that the standard of physical presence was incorrectly applied to their witness. Second, the complainant addresses concerns about the decision to disallow consideration of a key piece of evidence on the basis that it was inadvertently omitted from the evidentiary file provided to respondent. On this second point they assert that their witness would have been able to speak to the authenticity of the list[1] and its connection to identifying individuals present in Ruthven. And third, the complainant contends that although the Resolution Officer determined that evidence submitted by the respondents was irrelevant for the purposes of the arbitration, they sustained the inclusion of the information submitted in the form of lengthy statements and witness questioning.

2. **Evidence:** The complainant in the appeal points to video evidence and a list of those receiving citations to contend that the evidence points to a violation of policy. Further, the complainant suggests that both the evidence submitted and testimony that would have otherwise been provided by their witness, does constitute sufficient reason to conclude that the evidence clearly does not support the findings.

---

[1] Referring to the list of individuals receiving a trespass citation in the Ruthven Building on November 17, 2023 subsequently provided to the University by UMPD for the purposes of substantiating a complaint.

1

**Summary of Respondent Response:**
On September 23rd, ahead of the scheduled convening of the University Appeals Board, the Respondents (jointly) submitted a response to the University Appeal. I have thoroughly reviewed and considered all information contained which I have determined to be specifically relevant to the matter.

1. **Procedures:** With regard to the decision to limit testimony, the respondents (collectively) contend that the Resolution Officer's decision was balanced with their decision to exclude witnesses they had requested. In the response I noted that the Respondents, do however, express agreement that witness testimony should not be excluded based on a standard of physical presence.

2. **Evidence:**
   - Regarding witness testimony, the respondents (collectively) contend that should further testimony have been allowed from Oesterle, her ability to view footage live would not provide the necessary credibility to authenticate the evidence.
   - Regarding the UMPD-provided list of individuals receiving citation, the respondents assert that its inclusion "would not have materially affected the outcome of the hearing" and therefore disagree with its use as grounds for appeal. Further, they contend that a list of names does not amount to evidence of a violation.
   - In reference to body camera videos, the respondents assert that it shows "a group of unidentified occupants being warned that they must leave." And that the complainant failed to show that the respondents were among those occupants in the videos.

**VPSL Review of Appeals Board Report:**
The scope of role of the appeals board is to review the appeal as submitted and make a recommendation as to the merits of the appeal and subsequent actions. On September 30th, 2024, the appeals board submitted their written report with recommendations and I thank them for their service to the University community.

**Procedural Error:**
   - **Witnesses/Testimony Exclusion -** In their report, the appeals board found the appeal submitted by the complainant did not effectively demonstrate a procedural error. Regarding the inclusion of witnesses, the Appeals Board seems to have relied on a viewpoint that there was parity between witnesses; and because the standard applied by the Resolution Officer was evenly applied, there was no procedural error. To this point, I disagree.
   It is important to focus on the central question to be answered in this matter. In the materials submitted by both complainant and respondent, there is observed agreement regarding the fact that individuals were in

2

the President's Office on November 17th and were given a lawful request to leave a university-controlled premises. The responding parties state that the University did not present its case to reach a preponderance of the evidence to conclude that the alleged respondents were those students in the video. The complainant contends that their witness was material to this central question. To this point, I agree that Teresa Oesterle, being the Chief of Staff for the Department of Public Safety and Security would be, given their role, Knowledgeable about the incident and the process by which individuals are identified. To differentiate, the witnesses requested by the respondents were excluded because they were unable to speak to the incident and the central question to be considered in the arbitration. Therefore, I concur with the complainant that the limitation on testimony of Teresa Oesterle constituted a procedural deviation which very likely had a material impact on the outcome of the case.

- **Evidentiary Support for Finding -** The additional ground for the appeals board to consider was the complainant's assertion that the evidence does not support the finding. In review of the full case file, it is clear to me what the parties themselves have each acknowledged. This fact is that the video evidence submitted in this matter establishes well beyond a preponderance that individuals were present in the President's Office and the Ruthven rotunda on November 17th during a time the building was closed, that same evidence clearly supports that a uniformed officer identified themselves and gave multiple clear warnings, that each individual had opportunity to leave without incident, and documents refusal to do so. For at least violation Q under the Statement, the video evidence demonstrates that individuals failed to comply with a lawful request to leave a university-controlled premises given by a police officer in their official capacity, who identified themselves and their role. This leaves the remaining central question to this case, which is whether those individuals present in the President's Office and the Ruthven Rotunda are indeed the individual respondents associated with this case. In this case the Appeals Board does not seem to sufficiently grapple with this question. In my judgment, this question can and should be answered through a review of all information presented by the complainant. Since not all relevant evidence was considered, and that was due, in part, to the Resolution Officer's decision referenced above, I concur with the complainant that the evidence does not support the finding.

**VPSL Determination:**
The identified respondents in this matter were charged with alleged violations under the Statement. These violations were "N" (disruption) and "Q" (Failure to comply). First, based

3

on disruption, the complainant must establish that the actions of individuals went beyond "undue interference" as outlined in SPG 601.01.[2] I note that this standard for disruption, as appropriately described in the SPG, "must not be invoked lightly." The SPG, although representing important guidance, focuses primarily on disruption of a speaker rather than disruption to a university activity or program. However, I believe the same standards for review should apply.  At that point in time, the University has historically tolerated expressive protest in university spaces. If the individuals in the President's Office and Rotunda had concluded their protest and departed the space when directed to do so as others decided to do, I believe it to be most likely no complaint would have been brought. For this reason, I am accepting the appeals board recommendation based on violation N and removing that charge from further consideration.

Regarding Violation Q, however, the associated facts here are clearer for the purpose of my review. As has been established, the parties do not differ on whether individuals were present in the President's Office and Rotunda, were given a directive to leave, refused to do so, and were subsequently given a citation for trespass. Therefore, there is no contention that a policy violation did occur. There is, however, a contention that the University did not establish that the individual respondents were indeed the one's present in either the President's Office or the Rotunda. In their complaint the University submitted a list of individuals provided by UMPD. I find that list to be a credible piece of evidence worthy of consideration. I also note that all respondents could have, and presumably would have, submitted evidence to refute their involvement if such information were available. I find no such evidence submitted by the respondents which lends further credibility to the assertion that all those charged as respondents are indeed those individuals receiving a citation for trespass in the Ruthven building on the 17th of November 2023.

For these reasons, I am electing to *MODIFY* the recommendation provided by the appeals board regarding the allegation under violation "Q." I find that there is sufficient evidence for a final determination without need for further review. As such, I am modifying the original finding to *RESPONSIBLE* for violation Q for all identified respondents.

In review of the complainant's requested outcome, the VPSL notes that prior to the hearing parties were offered the opportunity to resolve the matter with a formal reprimand upon acknowledgement of responsibility. Subsequently, for those electing to request an arbitration hearing, the requested outcome was modified to Disciplinary Probation. In my determination, I believe the former request of a formal reprimand to be an appropriate resolution to this matter with the understanding that further disciplinary concerns of a similar nature may result in escalated disciplinary outcomes.

With this decision, this matter is formally closed.

---

[2] SPG 601.01 Freedom of Speech and Artistic Expression

4