# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| NORA HILGART-GRIFF et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:24-cv-13425 |
| | ) | |
| v. | ) | Hon. Laurie J. Michelson |
| | ) | Mag. Elizabeth A. Stafford |
| REGENTS OF THE UNIVERSITY | ) | |
| OF MICHIGAN et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT WITH PREJUDICE OR, IN THE ALTERNATIVE, <u>TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS</u>

Defendants Regents of the University of Michigan, Santa Ono, Martino Harmon, Omar Torres, Stephanie Jackson, and Grand River Solutions, Inc.[1] hereby move this Court to dismiss Plaintiffs' Amended Complaint ("AC") in its entirety and with prejudice for failure to state a claim upon which relief can be granted and for want of jurisdiction pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. In the alternative, Defendants hereby move this Court to strike the AC's class action allegations pursuant to Rule 23(d)(1)(D).

---

[1] Throughout this Motion and the accompanying materials, the term "Defendants" refers to all named defendants, and the term "Individual Defendants" refers to Santa Ono, Martino Harmon, Omar Torres, and Stephanie Jackson.

The AC fails to state any claim. It does not state a claim under the First Amendment because there are no plausible allegations of content- or viewpoint-based discrimination, impermissible restriction of speech in a public forum, or unlawful prior restraint. It does not state a due process claim because it does not adequately allege that the University accountability proceedings at issue implicated protected property or liberty interests; and, in any case, Plaintiffs were provided more than sufficient process. The AC also fails to state an equal protection claim because it does not offer anything but conclusory allegations that any University policy or proceeding at issue was applied or conducted in a discriminatory manner.

In addition, the AC's demand for money damages from Individual Defendants should be dismissed due to lack of personal involvement and qualified immunity, as well as sovereign immunity to the extent the AC seeks money damages from Defendants Torres and Jackson in their professional capacities based on actions taken while employed by the University. Dismissal should be with prejudice because Plaintiffs have already tried but failed to address the numerous pleading deficiencies.

Finally, in the alternative, the AC's class action allegations should be stricken for failure to adequately allege numerosity and because the AC, as pleaded, confirms that there are individualized and fact-intensive issues involved in identifying class members and adjudicating their claims.

Pursuant to Local Rule 7.1(a), counsel for Defendants met and conferred with counsel for Plaintiffs via videoconference on May 1, 2025, regarding this Motion. Counsel for Plaintiffs did not concur in the relief sought.

WHEREFORE, Defendants respectfully request that the Court grant this Motion and either dismiss the AC in its entirety and with prejudice, or, if any claims remain, strike the class action allegations from the AC.

Dated: May 6, 2025

Respectfully submitted,

/s/ Lauren J. Hartz

| | |
|---|---|
| Brian M. Schwartz (P69018) | Lauren J. Hartz (D.C. Bar No. 1029864) |
| Miller, Canfield, Paddock | Ishan Bhabha (D.C. Bar No. 1015673) |
| and Stone, P.L.C. | Jenner & Block LLP |
| 150 W. Jefferson, Ste. 2500 | 1099 New York Avenue, NW Suite 900 |
| Detroit, MI 48226 | Washington, DC 20001-4412 |
| (313) 963-6420 | +1 202 639 6000 |
| schwartzb@millercanfield.com | lhartz@jenner.com |
| | ibhabha@jenner.com |

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| NORA HILGART-GRIFF et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:24-cv-13425 |
| | ) | |
| v. | ) | Hon. Laurie J. Michelson |
| | ) | Mag. Elizabeth A. Stafford |
| REGENTS OF THE UNIVERSITY | ) | |
| OF MICHIGAN et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

# BRIEF IN SUPPORT OF DEFENDANTS'
# MOTION TO DISMISS THE AMENDED COMPLAINT WITH
# PREJUDICE OR, IN THE ALTERNATIVE,
# TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

ISSUES PRESENTED ...................................................................... x

CONTROLLING OR MOST RELEVANT AUTHORITY .................................... xi

INTRODUCTION ........................................................................... 1

BACKGROUND ............................................................................ 3

    A.    The University Has Viewpoint-Neutral Accountability Policies And Procedures For Students And RSOs. .............................. 3

    B.    Individual Plaintiffs Were Held Accountable For The Ruthven Occupation Based On Established University Procedures. ................. 6

    C.    SAFE Faced Accountability For Repeated Misconduct. ...................... 7

    D.    Procedural History .................................................................. 9

STANDARDS OF REVIEW ............................................................... 9

ARGUMENT ............................................................................... 10

I.    The Amended Complaint Fails To State A First Amendment Claim. .......... 10

    A.    Individual Plaintiffs Fail To State A Free Speech Claim (Count I). ................................................................ 10

    B.    SAFE Fails To State A Free Speech Claim (Count I). ........................ 14

    C.    The Amended Complaint Fails To State Petition Or Assembly Claims For The Same Reasons (Counts II-III). .................................. 20

II.    The Amended Complaint Fails To State A Due Process Claim. ................. 20

    A.    Individual Plaintiffs Do Not State A Claim (Counts IV & VI). ........................................................... 20

    B.    SAFE's Due Process Theories Are Meritless (Counts V & VI). .......................................................... 25

III.   The Amended Complaint Fails To State An Equal Protection Claim (Count VII). ..................................................................................27

IV.   At Minimum, Damages Claims Against Individual Defendants Must Be Dismissed For Multiple Reasons. ...........................................29

V.   The Amended Complaint's Class Allegations Should Be Stricken. .............33

    A.   The Class Is Insufficiently Numerous. .................................34

    B.   Individualized Issues Defeat Predominance And Ascertainability. ..................................................................36

VI.   The Amended Complaint Should Be Dismissed With Prejudice..................40

CONCLUSION ......................................................................................40

## TABLE OF AUTHORITIES

### CASES

*Alexander v. United States*, 509 U.S. 544 (1993) ....................................................14

*ACLU v. Mote*, 423 F.3d 438 (4th Cir. 2005) ..........................................................16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)................................................9

*Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002)..........................................................12

*Bhattacharya v. Murray*, 93 F.4th 675 (4th Cir. 2024) ...........................................12

*Black Lives Matter, D.C. v. United States*, No. 20-cv-1469, 2025 WL
823903 (D.D.C. Mar. 14, 2025)...........................................................................37

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) .........................25

*Bond Pharmacy Inc. v. Health Law Partners, P.C.*, No. 23-cv-13069,
2024 WL 4272735 (E.D. Mich. Sept. 23, 2024) ...................................................3

*Bowman v. White*, 444 F.3d 967 (8th Cir. 2006) .....................................................17

*Boxill v. O'Grady*, 935 F.3d 510 (6th Cir. 2019) ....................................................14

*Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich.
2015) ...................................................................................................................34

*Bright v. Gallia County*, 753 F.3d 639 (6th Cir. 2014) ..........................................12

*Carney v. University of Akron*, No. 15-cv-2309, 2016 WL 4036726
(N.D. Ohio July 28, 2016) ..................................................................................32

*Christian Legal Social Chapter of the University of California,
Hastings College of the Law v. Martinez*, 561 U.S. 661 (2010).......................19

*Crisp v. Neel-Wilson*, No. 15-cv-1265, 2015 WL 5882126 (S.D. Ohio
Oct. 7, 2015) .......................................................................................................30

*Crossroads Group, LLC v. City of Cleveland Heights*, 346 F.R.D. 75
(N.D. Ohio 2024) ................................................................................................39

*Cunningham v. Blackwell*, 41 F.4th 530 (6th Cir. 2022).........................................31

*Daskalea v. Washington Humane Society*, 275 F.R.D. 346 (D.D.C. 2011) ...........................................................................................38

*Day v. Whirlpool Corp.*, No. 13-cv-02164, 2014 WL 12461378 (W.D. Ark. Dec. 3, 2014) ...........................................................................35

*Dickens ex rel. Dickens v. Johnson County Board of Education*, 661 F. Supp. 155 (E.D. Tenn. 1987) ..............................................................21

*Dixon v. University of Toledo*, 702 F.3d 269 (6th Cir. 2012)..................................11

*Doe v. Ohio State University*, 239 F. Supp. 3d 1048 (S.D. Ohio 2017), *on reconsideration in part*, 323 F. Supp. 3d 962 (S.D. Ohio 2018)............23, 25

*Doe v. Rector & Visitors of George Mason University*, 132 F. Supp. 3d 712 (E.D. Va. 2015).........................................................................32

*Doe v. University of Cincinnati*, 872 F.3d 393 (6th Cir. 2017) .........................21, 26

*Eidson v. Tennessee Department of Children's Services*, 510 F.3d 631 (6th Cir. 2007)...............................................................................9

*Ellsworth v. City of Lansing*, 205 F.3d 1340, 2000 WL 191836 (6th Cir. 2000) (unpublished table decision).......................................................22

*Estate of Ritter ex rel. Ritter v. University of Michigan*, 851 F.2d 846 (6th Cir. 1988)..............................................................................33

*Filarsky v. Delia*, 566 U.S. 377 (2012)...................................................................31

*Flaim v. Medical College of Ohio*, 418 F.3d 629 (6th Cir. 2005) ..............21, 23, 26

*Gaddis v. Zanotti*, No. 19-cv-781, 2020 WL 6382020 (S.D. Ill. Oct. 30, 2020) .......................................................................................37

*Garza v. Fusion Industries, LLC*, No. 20-cv-336, 2023 WL 6276713 (W.D. Okla. Sept. 26, 2023) .................................................................35

*General Telephone Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318 (1980).........................................................................................34

*Getz v. Swoap*, 833 F.3d 646 (6th Cir. 2016)..........................................................31

*Gilles v. Garland*, 281 F. App'x 501 (6th Cir. 2008) .............................................16

*Gischel v. University of Cincinnati*, 302 F. Supp. 3d 961 (S.D. Ohio 2018), *on reconsideration in part*, No. 17-cv-475, 2018 WL 9944971 (S.D. Ohio June 26, 2018) ..................................................32

*Golden v. City of Columbus*, 404 F.3d 950 (6th Cir. 2005)..............................34, 35

*Goss v. Lopez*, 419 U.S. 565 (1975) ........................................................22

*Green v. Liberty Insurance Corp.*, No. 15-cv-10434, 2016 WL 1259110 (E.D. Mich. Mar. 30, 2016) ..........................................................10, 34

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006) ....................................30

*Harbin-Bey v. Rutter*, 420 F.3d 571 (6th Cir. 2005).................................................18

*Hasanaj v. Detroit Public Schools Community District*, 35 F.4th 437 (6th Cir. 2022).....................................................................20

*Healy v. James*, 408 U.S. 169 (1972) ........................................................19

*Hudson v. City of Chicago*, 242 F.R.D. 496 (N.D. Ill. 2007).................................38

*Hum v. Dericks*, 162 F.R.D. 628 (D. Haw. 1995) ....................................................35

*Hutt v. Greenix Pest Control, LLC*, No. 20-cv-1108, 2023 WL 2726357 (S.D. Ohio Mar. 31, 2023) ............................................................34

*International Outdoor, Inc. v. City of Troy*, 974 F.3d 690 (6th Cir. 2020) ....................................................................17

*Iota XI Chapter of the Sigma CHI Fraternity v. Patterson*, 538 F. Supp. 2d 915 (E.D. Va. 2008), *aff'd*, 566 F.3d 138 (4th Cir. 2009)............................19

*Jaksa v. Regents of University of Michigan*, 597 F. Supp. 1245 (E.D. Mich. 1984), *aff'd*, 787 F.2d 590, 1986 WL 16012 (6th Cir. 1986) (unpublished table decision) ....................................................21, 23, 26

*Jones v. Lubrizol Advanced Materials, Inc.*, 583 F. Supp. 3d 1045 (N.D. Ohio 2022) ....................................................................34

*Kentucky v. Graham*, 473 U.S. 159 (1985).................................................33

*Kerchen v. University of Michigan*, 100 F.4th 751 (6th Cir. 2024).........................31

*Laney v. Farley*, 501 F.3d 577 (6th Cir. 2007) .................................................. 21-22

*League of United Latin American Citizens v. Bredesen*, 500 F.3d 523
    (6th Cir. 2007) ...................................................................................... 10

*Lewis v. Dow Chemical Co.*, No. 24-cv-12911, 2025 WL 296598 (E.D.
    Mich. Jan. 23, 2025) ........................................................................... 40

*Lipian v. University of Michigan*, 453 F. Supp. 3d 937 (E.D. Mich.
    2020) .................................................................................................... 30

*Lowery v. Jefferson County Board of Education*, 586 F.3d 427 (6th Cir.
    2009) .................................................................................................... 17

*Lunini v. Grayeb*, 395 F.3d 761 (7th Cir. 2005) ............................................... 32-33

*Marcavage v. City of Philadelphia*, 481 F. App'x 742 (3d Cir. 2012).................... 29

*Meola v. Phi Kappa Psi Fraternity, Inc.*, 723 F. Supp. 3d 610 (S.D.
    Ohio 2024) .......................................................................................... 13

*Nylen v. City of Grand Rapids*, 475 F. Supp. 3d 744 (W.D. Mich.
    2019) .................................................................................................... 32

*O'Neil v. Appel*, 165 F.R.D. 479 (W.D. Mich. 1996)......................................... 35, 36

*Oom v. Michaels Cos.*, No. 16-cv-257, 2017 WL 3048540 (W.D. Mich.
    July 19, 2017)....................................................................................... 34

*In re Park Central Global Litigation*, No. 09-cv-765, 2014 WL
    4261950 (N.D. Tex. Aug. 25, 2014)............................................... 35, 36

*Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37
    (1983).................................................................................................... 15

*Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh*, 58 F. Supp.
    2d 619 (W.D. Pa. 1999), *aff'd*, 229 F.3d 435 (3d Cir. 2000) ............. 20

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) ............ 10, 34

*Prows v. City of Oxford*, No. 22-cv-693, 2023 WL 3868266 (S.D. Ohio
    June 7, 2023)........................................................................................ 20

*Reform America v. City of Detroit*, 37 F.4th 1138 (6th Cir. 2022).......................... 29

*Reichle v. Howards*, 566 U.S. 658 (2012) ..............................................31

*Romberio v. UnumProvident Corp.*, 385 F. App'x 423 (6th Cir. 2009)..................39

*S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553 (6th Cir. 2007) ........................................................................15

*Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460 (6th Cir. 2017) ..................................................37

*Schilling v. Kenton County*, No. 10-cv-143, 2011 WL 293759 (E.D. Ky. Jan. 27, 2011)........................................................................34

*Sears v. Washington*, 655 F. Supp. 3d 624 (E.D. Mich. 2023)................................30

*Sensabaugh v. Halliburton*, 937 F.3d 621 (6th Cir. 2019) ......................................12

*Smith v. Bauer*, No. 22-cv-382, 2023 WL 2706252 (W.D. Mich. Mar. 13, 2023) ........................................................................28

*Sullivan v. City of Berkeley*, 328 F.R.D. 352 (N.D. Cal. 2018)..............................36

*Sullivan v. Ohio State University*, No. 23-cv-3174, __ F. Supp. 3d __, 2025 WL 828966 (S.D. Ohio Jan. 31, 2025)......................................11

*Thomas v. Chicago Park District*, 534 U.S. 316 (2002)..........................................17

*Torres v. Goddard*, 314 F.R.D. 644 (D. Ariz. 2010) ...............................................38

*Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357 (6th Cir. 2018)........................................................................27

*Turnage v. Norfolk Southern Corp.*, 307 F. App'x 918 (6th Cir. 2009)..................35

*Veasy v. Teach for America, Inc.*, 868 F. Supp. 2d 688 (M.D. Tenn. 2012) ........................................................................13

*Vereecke v. Huron Valley School District*, 609 F.3d 392 (6th Cir. 2010) ...................................................................... 12-13

*Viewpoint Neutrality Now! v. Board of Regents of University of Minnesota*, 109 F.4th 1033 (8th Cir. 2024) ........................................16

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)..........................................27

*Viola v. Ohio Attorney General*, No. 20-cv-765, 2021 WL 510746 (N.D. Ohio Feb. 11, 2021) ...............................................................33

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .............................36

*White v. Pauly*, 580 U.S. 73 (2017) ........................................................31

*Whiting v. City of Athens*, 699 F. Supp. 3d 652 (E.D. Tenn. 2023), *aff'd*, No. 23-cv-6082, 2024 WL 3537651 (6th Cir. July 25, 2024) ...........12

*Wilson v. Johnson*, 247 F. App'x 620 (6th Cir. 2007).............................13

*Wood v. Strickland*, 420 U.S. 308 (1975), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................. 24-25

*Wysong Corp. v. APN, Inc. (17-1975)*, 889 F.3d 267 (6th Cir. 2018)....................40

*Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532 (6th Cir. 2012) ...............................................................................38, 39

## RULES

Fed. R. Civ. P. 23(b)(3)............................................................................37

Fed. R. Civ. P. 23(c)(1)(A) ......................................................................10

## OTHER AUTHORITIES

Eilene Koo & Marissa Corsi, *Washtenaw County Prosecutor's Office Authorizes Criminal Charges Against 4 Individuals For Nov. 17 Protest*, Mich. Daily (May 16, 2024),   https://perma.cc/8FZX-QBPL .........................................................................................................6

*Standard Practice Guide Policies, Use of University of Michigan Facilities (SPG 601.41)*, Univ. of Mich., https://spg.umich.edu/policy/601.41 [https://perma.cc/FMN3-7EHA] ................................16

## <u>ISSUES PRESENTED</u>

1) Does the Amended Complaint fail to state a claim under the First Amendment?

2) Does the Amended Complaint fail to state a procedural due process claim under the Fourteenth Amendment?

3) Does the Amended Complaint fail to state an equal protection claim under the Fourteenth Amendment?

4) Are the Amended Complaint's demands for money damages barred by lack of personal involvement, qualified immunity, and/or sovereign immunity?

5) Should the class action allegations be stricken because the Amended Complaint on its face does not support class certification?

## CONTROLLING OR MOST RELEVANT AUTHORITY

**CONSTITUTIONAL PROVISIONS**
U.S. Const. amend. I
U.S. Const. amend. XIV

**CASE LAW PERTAINING TO FIRST AMENDMENT CLAIMS**
*Bowman v. White*, 444 F.3d 967 (8th Cir. 2006)
*Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427 (6th Cir. 2009)
*Sensabaugh v. Halliburton*, 937 F.3d 621 (6th Cir. 2019)
*Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002)

**CASE LAW PERTAINING TO PROCEDURAL DUE PROCESS CLAIMS**
*Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017)
*Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005)
*Laney v. Farley*, 501 F.3d 577 (6th Cir. 2007)

**CASE LAW PERTAINING TO EQUAL PROTECTION CLAIM**
*Reform Am. v. City of Detroit*, 37 F.4th 1138 (6th Cir. 2022)
*Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357 (6th Cir. 2018)

**CASE LAW PERTAINING TO DAMAGES CLAIMS**
*Cunningham v. Blackwell*, 41 F.4th 530 (6th Cir. 2022)
*Filarsky v. Delia*, 566 U.S. 377 (2012)
*Kentucky v. Graham*, 473 U.S. 159 (1985)
*Kerchen v. Univ. of Michigan*, 100 F.4th 751 (6th Cir. 2024)
*Sears v. Washington*, 655 F. Supp. 3d 624 (E.D. Mich. 2023)

**CASE LAW PERTAINING TO CLASS ALLEGATIONS**
*O'Neil v. Appel*, 165 F.R.D. 479 (W.D. Mich. 1996)
*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011)
*Romberio v. UnumProvident Corp.*, 385 F. App'x 423 (6th Cir. 2009)
*Turnage v. Norfolk Southern Corp.*, 307 F. App'x 918 (6th Cir. 2009)

## INTRODUCTION

The University of Michigan has a proud and robust tradition of free speech on campus. That tradition is supported and in fact enhanced by clear and public policies for students and recognized student organizations ("RSOs") that ensure fair access and appropriate use of University spaces; explain what activity crosses the line into prohibited conduct; and establish comprehensive processes for adjudicating violations and imposing sanctions. Like colleges and universities around the country, the University enforces these policies to ensure that *all* community members can exercise their rights to freedom of expression. These policies do not discriminate based on content or viewpoint. Rather, they allow the University to regulate conduct that significantly disrupts campus operations, threatens community safety, or infringes on the rights of other members of the community to express themselves.

This putative class action challenges application of University policies to six students and one RSO who have faced accountability for actions that violate those policies. Their Amended Complaint ("AC") ignores that thousands of pro-Palestinian community members have protested zealously without consequence, including through events and demonstrations for which the University has provided space and resources. Plaintiffs have taken a much different path, one that has nothing to do with their speech. Plaintiffs have faced accountability not because of their viewpoint, but because of their willful and in some cases repeated violations of

longstanding University policies—including by participating in a violent mob that forced its way into a locked building, and, in SAFE's case, disrupting a busy community-wide event to the detriment of campus health and safety and trespassing and vandalizing the home of a University official. In most cases, Plaintiffs do not even dispute their participation in those events (which have led to criminal charges for some participants). Plaintiffs cannot escape the consequences of their actions under the guise of constitutional claims.

The AC suffers from the same basic flaws as the original pleading and should be dismissed in its entirety and with prejudice. First, it fails to state any claim. Plaintiffs assert a variety of First Amendment theories—but the AC's allegations show only the application of neutral policies about space reservations and prohibited conduct, and offer no more than conclusory speculation that Plaintiffs were targeted for their beliefs. Nor does the AC adequately plead a procedural due process violation based on Plaintiffs' accountability proceedings: it does not identify a qualifying liberty or property interest, and in all events Plaintiffs received clear notice and robust hearings and appeals to adjudicate their misconduct. Plaintiffs are simply averse to being held accountable. Lastly, the equal protection claim is plainly deficient: Plaintiffs do not allege they belong to a protected class, nor do they identify any similarly situated students or RSOs who received more favorable treatment for equivalent conduct. Setting aside these pleading deficiencies, Plaintiffs

cannot sustain their demands for money damages from Individual Defendants due to lack of personal involvement, qualified immunity, and sovereign immunity.

Finally, if any claim survives dismissal, it cannot proceed as a putative class action. The class allegations are so irreparably deficient that they should be stricken at the outset: the putative class is insufficiently numerous, and the individualized issues as to class membership and merits overwhelm any common questions.

## BACKGROUND

Consistent with the applicable standard of review, this background is based on the AC's allegations and documents to which those allegations refer. Those documents, attached as exhibits to this Motion, are properly considered because they are referred to in the AC and central to the claims. *Bond Pharmacy Inc. v. Health L. Partners, P.C.*, No. 23-cv-13069, 2024 WL 4272735, at *2 & n.3 (E.D. Mich. Sept. 23, 2024). Where exhibits "contradict[] allegations in the complaint, rendering them implausible, the exhibit trumps the allegations." *Id.* at *2 (quotation marks omitted).

### A.   The University Has Viewpoint-Neutral Accountability Policies And Procedures For Students And RSOs.

Longstanding policies govern conduct and accountability for students and RSOs. *See* ECF No. 30 ("AC") ¶¶ 76–99, 191–198, PageID.336–339, 356–358. While the AC extensively criticizes recent changes to policies, it acknowledges that the challenged accountability proceedings all took place under the pre-amendment versions of the policies. *See id.* ¶¶ 77, 100–113, PageID.336, 340–342.

3

**Students.** The *Statement of Student Rights and Responsibilities* ("*Statement*") applies to students, including Plaintiffs Nora Hilgart-Griff, Jared Eno, Kristen Bagdasarian, Zaynab Elkolaly, Rhea Chappell, and Arwa Hassaballa ("Individual Plaintiffs"). *Id.* ¶ 76, PageID.336. It sets forth expectations and consequences for violating those expectations. Ex. A at 2–4. Provision N prohibits "[o]bstructing or disrupting classes . . . or other activities or programs of the University; or obstructing access to university facilities, property, or programs (except for behavior that is protected by the University's policy on Freedom of Speech and Artistic Expression)"; and Provision Q prohibits "[f]ailing to comply with lawful requests to leave a University controlled premises." AC ¶ 147, PageID.348; Ex. A at 3–4.

The *Statement* establishes robust procedures to adjudicate violations and impose any sanctions. AC ¶¶ 76–99, PageID.336–339. A complaint can be resolved through the respondent's acceptance of responsibility; an adaptable conflict resolution process if agreed to by both parties; or a hearing. *Id.* ¶¶ 79–95, PageID.336–339; *see* Ex. A at 5–8. The *Statement* also provides for review by an Appeals Board that recommends a decision to Vice President of Student Life Martino Harmon ("VPSL"), who can accept or modify the recommendations and makes the final decision. AC ¶¶ 96–99, PageID.339; *see* Ex. A at 8. The lowest sanction is a formal reprimand, which is "[a] formal notice that the [*Statement*] has

4

been violated and that future violations will be dealt with more severely." Ex. A at 9; *see* AC ¶ 154, PageID.349.

*RSOs.* For RSOs, University policies include the *Standards of Conduct for Recognized Student Organizations* ("*Standards*") and the Student Organization Advancement and Recognition Accountability Procedure Manual ("SOAR Manual"). AC ¶¶ 189, 200, PageID.356–359. Under the *Standards*, RSOs (1) "must not foster, promote, or participate in activities that unreasonably threaten the safety or well being of their members" or others (§ III.B.1); (2) "must use University-controlled spaces in accordance with the standards of the particular space" (§ III.B.6); and (3) "must adhere to University policies, including but not limited to the . . . Diag Policy" (§ III.B.10). Ex. B; *see also* Ex. D. Potential sanctions range from reprimand to suspension for the RSO. Ex. B § IV.

The SOAR Manual establishes RSO accountability procedures, which start with a complaint and then follow various resolution pathways. AC ¶¶ 191, 193, PageID.356–357; *see* Ex. C at 7–17. The Formal Resolution Process requires a student-panel hearing. AC ¶¶ 194–195, PageID.357; *see* Ex. C at 13–15. The Dean of Students can uphold, overturn, or modify the student panel's recommendation. AC ¶ 196, PageID.357; *see* Ex. C at 16, 18–19. If appealed, an Appeals Board makes recommendations to the VPSL, who accepts or modifies them. AC ¶ 198, PageID.357–358; *see* Ex. C at 20–21.

**B.      Individual Plaintiffs Were Held Accountable For The Ruthven Occupation Based On Established University Procedures.**

Individual Plaintiffs do not dispute that they all participated in the occupation of the Ruthven Building on November 17, 2023. AC ¶¶ 114–130, PageID.342–345. Despite describing their actions as an anodyne "sit-in," they acknowledge that a large group of students occupied the building, that numerous law enforcement agencies were dispatched to address the incident, and that dozens of students were arrested and cited. *Id.* ¶¶ 120–122, PageID.343. Multiple individuals have faced criminal charges for conduct during the incident, including resisting and obstructing law enforcement officers and attempting to disarm an officer.[2]

Omar Torres, who was hired by the University to assist with student accountability proceedings, filed disciplinary complaints against the students involved, including Individual Plaintiffs. *See id.* ¶¶ 142–145, 147, PageID.347–348; Exs. E–J. Those complaints stated that the respondents "entered the Ruthven Administrative Building at a time when the building was locked" and defied "a clear directive to leave University-controlled premises" and a "succession of additional warnings to leave the facility" from the University Police Department. *See, e.g.*, Ex. E. Plaintiffs opted for arbitration before a student panel, the panel found them not

---

[2] *See* Eilene Koo & Marissa Corsi, *Washtenaw County Prosecutor's Office Authorizes Criminal Charges Against 4 Individuals For Nov. 17 Protest*, Mich. Daily (May 16, 2024), https://perma.cc/8FZX-QBPL.

responsible, and Torres appealed. AC ¶¶ 157, 162–164, PageID.350–351. After receipt of the appeals board recommendation, the VPSL found Individual Plaintiffs responsible for violating Provision Q only. *Id.* ¶ 166, PageID.352; Ex. L. Although Plaintiffs allege that Torres sought disciplinary probation during the collective arbitration after initially seeking a formal reprimand, *see* AC ¶161, PageID.350–351, Plaintiffs acknowledge that the VPSL nonetheless imposed only a formal reprimand, which was the lightest sanction possible. AC ¶ 167, PageID.352.

### C.    SAFE Faced Accountability For Repeated Misconduct.

SAFE, a pro-Palestinian RSO, has also faced accountability for multiple *Standards* violations occurring over more than five months. Ex. K. The University employed Stephanie Jackson to assist with these proceedings. AC ¶ 205, PageID.358. In an October 31, 2024 disciplinary complaint, SAFE was charged with violations including failure to obtain a required permit for a "die-in"[3] demonstration during the "Festifall" event in August 2024 and creating a safety hazard by carrying out that demonstration. *Id.* ¶ 207, PageID.359; Ex. K. The complaint sought a two-to-four-year suspension of SAFE. AC ¶ 208, PageID.359; Ex. K at 10.

Although the AC discusses this disciplinary complaint extensively, AC ¶¶ 207–239, PageID.359–364, Plaintiffs neglect to mention that SAFE was also

---

[3] The "die-in" involved participants lying on the ground in the Diag as the names of individuals killed in the conflict were read. AC ¶ 222, PageID.361.

charged with violating § III.B.1 (Health and Safety) for "[h]ost[ing] and participat[ing] in an unwelcome, disruptive, threatening, and unsafe demonstration at the private residence of Regent Sarah Hubbard" in May 2024. Ex. K at 2; Ex. B. As alleged, SAFE "[t]respassed onto Regent Hubbard's front lawn"; "[s]howed up, uninvited, to the front door of Regent Hubbard's personal home by sending a member in a full face covering / mask to post demands on her door"; and "littered debris such as body bags, cement blocks, and baby dolls" with "red paint on the body bags and baby dolls . . . to look like blood." Ex. K at 8–9.

A student panel held a hearing and recommended a finding of partial responsibility. AC ¶¶ 240–242, PageID.364–365; Ex. M. The Dean of Students, in turn, found SAFE responsible for "repetitive and flagrant disregard of University policy and instruction," including for holding the "die-in" without a permit—and against the University's instructions not to do so—and for posing a serious threat of harm during the activity at Regent Hubbard's home. Ex M at 2–5; *see* AC ¶¶ 245–246, PageID.365–366. The Dean suspended SAFE for two years, reviewable after one year if SAFE completes certain educational measures. Ex. M at 4. SAFE appealed this decision, and the VPSL ultimately upheld the Dean's determination. AC ¶¶ 249–252, PageID.366–367; Ex. N. No decisionmaker found merit in SAFE's claims of procedural irregularity based on Stephanie Jackson's role. Ex. N at 1.

### D.    Procedural History

Defendants moved to dismiss the Complaint and to strike the class allegations, ECF No. 27, PageID.142–189. Plaintiffs then filed an amended pleading, which adds a few allegations and asserts seven causes of action under 42 U.S.C. § 1983. AC ¶¶ 268–366, PageID.370–388. Plaintiffs seek not only to undo the challenged proceedings but also to require sweeping changes to University policies and procedures. For example, they demand that the Court bar the University from "[i]nitiating or conducting disciplinary proceedings where an executive officer is the final adjudicator of complaints brought on behalf of the University against a student or a student organization" and from "[r]equiring permits for student organizations to engage in speech activities on the Diag." *Id.* Relief Requested (b)(i), (viii), PageID.389–390. Plaintiffs also demand compensatory and punitive damages. *Id.* (c), (d), PageID.390.

## **STANDARDS OF REVIEW**

To survive a motion to dismiss for failure to state a claim, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). The allegations "must do more than create speculation or suspicion of a legally cognizable cause of action;

they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

A motion to strike a complaint's class allegations may be brought at any point in the litigation, consistent with Rule 23's directive that "the court must determine by order whether to certify the action as a class action" at "an early practicable time after a person sues." Fed. R. Civ. P. 23(c)(1)(A); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). "When the defendant challenges class certification based solely on the allegations in the complaint, the standard is the same as that applied in deciding a motion to dismiss under Rule 12(b)(6)." *Green v. Liberty Ins. Corp.*, No. 15-cv-10434, 2016 WL 1259110, at *2 (E.D. Mich. Mar. 30, 2016) (ellipsis and quotation marks omitted).

## **ARGUMENT**

### I.    **The Amended Complaint Fails To State A First Amendment Claim.**

The AC does not state a claim for any violation of Plaintiffs' First Amendment rights to speech, petition, and assembly. AC ¶¶ 268–316, PageID.370–379.

### A.    **Individual Plaintiffs Fail To State A Free Speech Claim (Count I).**

Individual Plaintiffs appear to bring two free-speech claims: (1) the University retaliated or discriminated against them in a content- or viewpoint-based manner by initiating disciplinary proceedings against them "solely for their expressions of pro-Palestine speech," *id.* ¶ 276, PageID.372; and (2) their formal

reprimands act as a prior restraint, *id.* ¶ 280, PageID.373. Neither has merit.

***Viewpoint-based discrimination or retaliation.*** Individual Plaintiffs do not dispute that the University can permissibly restrict demonstrations (such as sit-ins) in the Ruthven Building, nor do they challenge any policies governing use of that space. Instead, they chiefly contend that, due to their viewpoint, they were held accountable for misconduct while other students or groups were not. AC ¶¶ 73, 74, 146, 254, PageID.335, 348, 367. In this context, "[r]etaliation and discrimination are two names for the same concept here: both involve taking an adverse action . . . because of the content or viewpoint embodied in their speech." *Sullivan v. Ohio State Univ.*, No. 23-cv-3174, __ F. Supp. 3d __, 2025 WL 828966, at *4 & n.1 (S.D. Ohio Jan. 31, 2025). The First Amendment retaliation framework thus applies.

To state a retaliation claim, Plaintiffs must plausibly allege that they "(1) engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against [them] that would deter a person of ordinary firmness from continuing to engage in that conduct; [and] (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [their] protected conduct." *Dixon v. Univ. of Toledo*, 702 F.3d 269, 274 (6th Cir. 2012) (quotation marks omitted). They fail to allege at least the latter two elements.

Individual Plaintiffs allege only one adverse action against them—issuance of formal reprimands. AC ¶ 167, PageID.352. But that is not a cognizable adverse

action. "[A]n official action will be deemed adverse only if it could deter a person of ordinary firmness from the exercise of the right at stake." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (quotation marks omitted). This is an objective test. *Whiting v. City of Athens*, 699 F. Supp. 3d 652, 660 (E.D. Tenn. 2023), *aff'd*, No. 23-cv-6082, 2024 WL 3537651 (6th Cir. July 25, 2024). The reprimands issued to Individual Plaintiffs fall short of meeting it, as courts have found in analogous circumstances. *See, e.g.*, *Sensabaugh v. Halliburton*, 937 F.3d 621, 629 (6th Cir. 2019) (letters directing school employee to take certain action to avoid discipline and suspending him with pay were not adverse actions); *Bhattacharya v. Murray*, 93 F.4th 675, 689 (4th Cir. 2024) ("Concern Card," which monitored behavior and could prompt review by disciplinary committee, was not adverse action); *see also Whiting*, 699 F. Supp. 3d at 660 (*de minimis* injury cannot sustain retaliation claim).

Individual Plaintiffs also fail to plausibly allege that the disciplinary action against them was motivated by a desire to retaliate against them for their speech. Pleading this causal connection requires "both (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Bright v. Gallia Cnty.*, 753 F.3d 639, 653 (6th Cir. 2014) (quotation marks omitted). "[S]pecific, nonconclusory allegations" of the link are required. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d

392, 400 (6th Cir. 2010) (quotation marks omitted). Plaintiffs have not pled facts sufficient to support an inference that they faced disciplinary action for First Amendment-protected speech, as opposed to their (admitted) occupation of the University's main administrative building despite repeated warnings to leave.

Moreover, the AC's allegations are simply not enough to sustain Plaintiffs' speculation that they have faced disciplinary consequences when students supporting other views have not. The AC baldly and repeatedly asserts that "[n]o such measures are known to have been taken" against other students "engaging in speech and other expressive activities." AC ¶ 73; *see id.* ¶¶ 74, 146, 151–152, 174, 180–181, 206, 216, 253, PageID.335–367. These allegations are meaningless, and the Court should reject this sleight of hand: a plaintiff needs personal knowledge, sufficient data, or information from others to plead a fact. *Meola v. Phi Kappa Psi Fraternity, Inc.*, 723 F. Supp. 3d 610, 613 (S.D. Ohio 2024); *see Veasy v. Teach for Am., Inc.*, 868 F. Supp. 2d 688, 692 n.8, 698 (M.D. Tenn. 2012) (holding that guesses as to alleged comparators cannot sustain a claim). Bottom line: Plaintiffs do not and cannot allege that any students engaging in remotely comparable conduct were treated more favorably based on their viewpoint.

Without factual allegations of *any* similarly situated students being treated differently, the retaliation (and thus discrimination) claims fail. *See, e.g.*, *Wilson v. Johnson*, 247 F. App'x 620, 625 (6th Cir. 2007) (rejecting viewpoint discrimination

claim where plaintiff conceded that university signage policy was viewpoint neutral and the only "evidence of viewpoint discrimination" was that his banners were removed "while others were not"). Conclusory allegations of retaliatory motive are insufficient to state a claim. *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019).

***Prior restraint.*** Nor do Individual Plaintiffs' formal reprimands act as a "prior restraint." *Contra* AC ¶ 280, PageID.373. The formal reprimands do not forbid Plaintiffs "from engaging in any expressive activities in the future, nor do [they] require [them] to obtain prior approval" for such activities. *Alexander v. United States*, 509 U.S. 544, 550–51 (1993). They are therefore not prior restraints in any sense, but instead "punishment[s] for past … conduct." *Id.* at 553.

## B. SAFE Fails To State A Free Speech Claim (Count I).

SAFE appears to allege the following theories under its free speech claim: (1) the policies governing use of the Diag—which Plaintiffs contend is a public forum, AC ¶ 210, PageID.359–360—place an unreasonable burden or unlawful prior restraint on its speech, *id.* ¶¶ 286–287, PageID.374; (2) the University held SAFE accountable for policy violations in retaliation "for [its] expression of pro-Palestine speech," *id.* ¶ 282, PageID.373; and (3) SAFE's suspension "unconstitutionally burden[s]" its speech, *id.* ¶ 285, PageID.373. None has merit.

***Challenge to Diag Policy.*** SAFE was charged with violating the University's Diag Policy—which applies to *all* RSOs—when it staged a die-in, without a permit,

in the same location and at the same time as another University event, which had already acquired a permit for that place and time. *See supra* at 8; Exs. D, K. In the AC, SAFE implicitly contests the policy, either on the ground that the restrictions unlawfully limited speech in a public forum or that they were an unlawful prior restraint. AC ¶¶ 210, 286–287, PageID.359–360, 374. Neither theory holds water.

To assess whether a regulation impermissibly burdens speech, courts determine the type of forum at issue and then whether any "prohibition on speech passes muster under the First Amendment." *S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 559 (6th Cir. 2007). The Supreme Court has delineated three categories of fora: those that are public by "tradition or designation"; limited public fora; and nonpublic fora. *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45–46 (1983). In traditional or designated public fora, content-neutral regulations—*i.e.*, time, place, or manner restrictions—must be "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.* at 45. In limited public fora, the state can impose "reasonable" regulations on speech so long as they are viewpoint-neutral. *Id.* at 46.

The Diag is, at most, a limited public forum. It is not by tradition or designation open to the public, as reflected in University policy stating that University facilities are "not open to the public in the same way as municipal or state parks, streets, and sidewalks; and no individual or group has a right to use [its]

facilities beyond the confines of University policy[.]"[4] *See, e.g.*, *Gilles v. Garland*, 281 F. App'x 501, 511 (6th Cir. 2008) ("Academic Quad" and other open areas at Miami University were limited public fora); *ACLU v. Mote*, 423 F.3d 438, 444 (4th Cir. 2005) (similar). And the Diag Policy is eminently reasonable: it seeks to coordinate multiple and competing uses of the University's outdoor space with no reference to the viewpoint of any speech. *See, e.g.*, *Mote*, 423 F.3d at 445 (university policy requiring reservations for outdoor spaces was reasonable, including due to limited space and resources); *cf. Viewpoint Neutrality Now! v. Bd. of Regents of Univ. of Minn.*, 109 F.4th 1033, 1042 (8th Cir. 2024) (allocation of university lounge space among student groups was reasonable even where permanently limiting which RSOs had access).

Indeed, even if the Diag qualifies as a *public* forum, the Diag Policy is a quintessentially valid time, place, and manner restriction that satisfies any higher scrutiny as well. It does not grant access based on the content or viewpoint of speech, and it is narrowly tailored to serve the University's significant safety and operational interests in "coordinat[ing] multiple uses of limited space," "assur[ing] preservation of . . . facilities," and "prevent[ing] … dangerous, unlawful, or impermissible" uses.

---

[4] *Standard Practice Guide Policies, Use of University of Michigan Facilities (SPG 601.41)*, Univ. of Mich., https://spg.umich.edu/policy/601.41 [https://perma.cc/ FMN3-7EHA] (cited at AC ¶ 112, PageID.341) (capitalization omitted); *see also* Ex. D at 8 ("Availability & Use") ("Only [RSOs] and university departments with valid University accounts . . . are eligible to reserve the Diag[.]").

*Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002). There are also ample alternatives for student expression on the University's campus, illustrated by the "decades" of expressive activity detailed in the AC. *See* AC ¶ 57, PageID.331.

For the same reasons, the Diag Policy does not operate as an unlawful prior restraint. Not every policy that restricts speech before it occurs is subject to the "more rigorous scrutiny" applied to "prior restraints." *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 434 (6th Cir. 2009). Instead, content-neutral permit requirements for spaces like the Diag operate just like valid "time, place, and manner regulation[s]," *Thomas*, 534 U.S. at 322; *see Lowery*, 586 F.3d at 434, so long as they avoid delegating "overly broad licensing discretion to official decision-makers," *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697–98 (6th Cir. 2020). The Diag Policy sets forth clear standards for how to reserve the space, without overly broad discretion, and Plaintiffs make no contrary allegations. Similar permitting requirements have been upheld time after time because "allow[ing] unregulated access to all comers could easily reduce rather than enlarge" a public space's "utility as a forum for speech." *Thomas*, 534 U.S. at 322 (upholding municipal park ordinance); *see also Bowman v. White*, 444 F.3d 967, 980–81 (8th Cir. 2006) (upholding permit requirement in light of university's interests in public safety, minimizing educational disruption, and fostering diverse uses of resources).

***Viewpoint-based discrimination or retaliation.*** To the extent SAFE alleges

17

it was held accountable solely because of the viewpoint or content of its speech—*e.g.*, AC ¶ 282, PageID.373—its claim is analyzed under the retaliation framework. *Supra* at 11. SAFE alleges adverse action due to its temporary suspension as an RSO,[5] AC ¶ 252, PageID.366–367, but fails to plausibly allege that the suspension resulted from anything other than SAFE's violations of multiple viewpoint- and content-neutral policies. SAFE vaguely insinuates that the University's actions were "motivated by something other than any alleged disruption of the [Festifall] event," and that no similar consequences are "known" to have befallen other RSOs. *See* AC ¶¶ 206, 228, PageID.358–362. But such bald claims that the University targeted SAFE for its viewpoint cannot sustain the extraordinary and unfounded assertion of retaliatory animus—belied by extensive pro-Palestinian expressive activity by thousands of community members during the same time period. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005). Indeed, one such allegation—that no "permit requirement has been known to have been imposed . . . on other groups espousing other viewpoints," AC ¶ 216, PageID.360—is directly contradicted by the generally applicable Diag policy. *Supra* at 14–17.

**Challenge to SAFE's suspension.** The AC alleges that SAFE's RSO

---

[5] Plaintiffs also allege that the disciplinary complaint violated SAFE's First Amendment rights by examining its Instagram post. AC ¶¶ 232–238, PageID.363–364. But they fail to mention that SAFE was found *not* responsible for any violation related to the post, and in all events the AC does not plausibly allege that the disciplinary complaint was motivated by retaliation.

suspension places an impermissible burden on its speech because it prevents SAFE "from organizing and attending on-campus protests." AC ¶ 285, PageID.373. Importantly, the temporary suspension only withdraws SAFE's *RSO status*. It does not prevent SAFE's members from engaging in any speech or demonstrations—they can still operate on campus like many other groups of students, they just cannot operate as an *RSO* and access the benefits of that status, such as access to a University account for funds, "access to office space and the ability to reserve" campus space, and "administrative support." AC ¶ 190, PageID.356. The mere "withdrawal of recognition" of RSO status does not deprive SAFE of its First Amendment rights but instead "simply removes the imprimatur of the University" from SAFE's activities. *Iota XI Chapter of the Sigma CHI Fraternity v. Patterson*, 538 F. Supp. 2d 915, 923–24 (E.D. Va. 2008), *aff'd*, 566 F.3d 138 (4th Cir. 2009). The Supreme Court has long recognized that RSO status can be premised on compliance with "reasonable regulations with respect to the time, the place, and the manner in which student groups conduct their speech-related activities." *Healy v. James*, 408 U.S. 169, 192–93 (1972); *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 687–90 (2010).

That is precisely what occurred here: SAFE was held accountable for multiple violations of reasonable time, place, and manner policies, including the Diag Policy and the health-and-safety provisions under the *Standards*, which

Plaintiffs do not challenge. SAFE cannot ask this court to "second guess" the withdrawal of its RSO status while failing to demonstrate that any policy is unreasonable. *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 58 F. Supp. 2d 619, 625 (W.D. Pa. 1999), *aff'd*, 229 F.3d 435 (3d Cir. 2000).

### C. The Amended Complaint Fails To State Petition Or Assembly Claims For The Same Reasons (Counts II-III).

Plaintiffs' remaining First Amendment claims, predicated on the rights to petition and peaceful assembly, fail for the same reasons articulated above—namely, that the AC does not allege any unlawful content- or viewpoint-based discrimination, retaliation, or prior restraint. *See Prows v. City of Oxford*, No. 22-cv-693, 2023 WL 3868266, at *13 (S.D. Ohio June 7, 2023) ("Courts typically evaluate free speech, assembly and petition claims under the same analysis." (citation omitted)).

## II. The Amended Complaint Fails To State A Due Process Claim.

Plaintiffs do not plausibly allege that they were "deprived of a protected liberty or property interest" "without adequate procedural protections." *Hasanaj v. Detroit Pub. Schs. Cmty. Dist.*, 35 F.4th 437, 447 (6th Cir. 2022).

### A. Individual Plaintiffs Do Not State A Claim (Counts IV & VI).

Individual Plaintiffs allege a "property and/or liberty interest" as "student[s]" at a public university as well as a liberty interest in their First Amendment rights. AC ¶¶ 321, 346, PageID.380, 384. They then sweepingly allege that the process afforded to them during the accountability proceeding for their occupation of the

Ruthven Building denied them fair notice, an opportunity to be heard and to rebut evidence, and a neutral decision-maker, and also failed to follow the University's own procedures. AC ¶ 324, PageID.380–381. Individual Plaintiffs fall far short of meeting their pleading burden, either in terms of alleging deprivation of a protected liberty or property interest or in terms of alleging inadequate process.

First, Individual Plaintiffs have not alleged impairment of a protected property or liberty interest in their status as students. The Sixth Circuit requires minimal due process protections before students are issued "significant disciplinary decisions." *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017). Courts apply this standard to severe sanctions like expulsion and suspension because such actions can threaten a putative liberty or property interest in continuing or completing post-secondary education. *See Jaksa v. Regents of Univ. of Mich.*, 597 F. Supp. 1245, 1247 (E.D. Mich. 1984) (one-term suspension), *aff'd*, 787 F.2d 590, 1986 WL 16012 (6th Cir. 1986) (unpublished table decision); *see also, e.g.*, *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 631–32 (6th Cir. 2005) (expulsion); *Univ. of Cincinnati*, 872 F.3d at 398–99 (year-long suspension). But "not every use or even misuse of school discipline implicates the Fourteenth Amendment." *Dickens ex rel. Dickens v. Johnson Cnty. Bd. of Educ.*, 661 F. Supp. 155, 157 (E.D. Tenn. 1987). Minor disciplinary actions do not trigger due process requirements because they do not "exclude the student from school." *Laney v. Farley*, 501 F.3d 577, 582 (6th Cir.

2007) (in-school suspensions); *see also Goss v. Lopez*, 419 U.S. 565, 576 (1975) (*de minimis* injuries to property interests do not trigger due process requirements). The formal reprimands challenged here—which represent the lightest sanction available and serve merely to warn students that future violations may yield consequences—do not meet that threshold. Indeed, multiple Plaintiffs graduated in 2024, and none alleges that they were impeded by these reprimands. AC ¶¶ 12, 14, PageID.325.

Nor would the disciplinary probation Torres allegedly sought during the arbitration—even if it had been imposed—have deprived Individual Plaintiffs of any protected interest in post-secondary education. AC ¶ 161, PageID.350–351. A disciplinary probation is a "designated period of time during which the student is not in good standing with the University," the terms of which "may involve restrictions of student privileges and/or set specific behavioral expectations." Ex. A. It thus similarly does not threaten or restrict a student's continued enrollment.

Individual Plaintiffs also cannot rely on deprivation of a liberty interest in their First Amendment rights because the formal reprimands do not impose any burden on those rights and do not constitute prior restraints. *See supra* at 14. "[N]ot having suffered any deprivation of liberty," Individual Plaintiffs cannot claim "that they were deprived of their liberty without due process of law." *Ellsworth v. City of Lansing*, 205 F.3d 1340, 2000 WL 191836, at *4 (6th Cir. 2000).

At any rate, the AC fails to allege that Individual Plaintiffs were denied due

22

process, which involves two basic requirements: "(1) notice, and (2) an opportunity to be heard." *Flaim*, 418 F.3d at 634; *see Jaksa*, 597 F. Supp. at 1254. Individual Plaintiffs received these protections and more under the *Statement*'s comprehensive processes. The disciplinary complaints explained the charges and key evidence; Individual Plaintiffs could confront the evidence against them and present their defense at the arbitration hearing and on appeal; and there are no non-conclusory allegations of decision-maker bias. *See, e.g.*, Ex. E; *see* AC ¶¶ 143–145, 147, 160–167, PageID.347–352. That process was more than adequate. *See, e.g., Jaksa*, 597 F. Supp. at 1249 (student received "more procedural protection than the due process clause requires" where there was notice and hearing); *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1082 (S.D. Ohio 2017) (student received sufficient process where he did "not allege[] that he did not receive notice or a hearing"), *on reconsideration in part*, 323 F. Supp. 3d 962 (S.D. Ohio 2018).

Individual Plaintiffs resort to arguing that the University failed to follow its policies. *See, e.g.*, AC ¶¶ 155–156, 168–179, PageID.349–354. But a university's departure from its own policies and procedures does not by itself amount to a due process deprivation. *Flaim*, 418 F.3d at 640. Plaintiffs are also wrong in any case. *First*, although the AC alleges that the Ruthven complaints were issued after the six-month timeline, it acknowledges that the *Statement* permits extensions. AC ¶¶ 82 n.4, 148, PageID.337, 348–349; Ex. A at 5. *Second*, Individual Plaintiffs cannot

23

show that a decision by the University to pursue a complaint via Torres (who was hired by the University, AC ¶¶ 34, 39, PageID.328) violated any written policy or substantively impacted student rights—much less in a way implicating due process. *Third*, despite allegations that Individual Plaintiffs were deprived of adaptable conflict resolution and a suggestion that they could elect that pathway at will, AC ¶¶ 84, 156, PageID.337–338, 350, Plaintiffs omit that *both* sides to a student disciplinary proceeding must agree to that process, Ex. A at 6. And *fourth*, Torres allegedly recommended disciplinary probation as a sanction during the arbitration proceedings, AC ¶ 161, PageID.350–351, but nothing in the *Statement* prevents such recommendations, any such recommendation would not bind any decision-maker, and Plaintiffs could appeal any *imposed* sanction. *See* Ex. A at 8.

Plaintiffs also criticize the VPSL's decision to rely on the list of students who were issued trespass warnings for refusing to leave the Ruthven Building in November 2023. AC ¶ 169, PageID.352–353; Ex. L. Yet Plaintiffs do not and cannot allege they were unaware that they received trespass warnings that day, or that they were unaware that their names were on the trespass warning list before any hearing. In short, they had an opportunity to rebut that evidence if the facts supported doing so. Moreover, "[i]t is not the role of the federal courts to set aside decisions of school administrators" based on disagreement with their "wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975), *abrogated on other grounds by Harlow v.*

24

*Fitzgerald*, 457 U.S. 800 (1982); *see also, e.g.*, *Ohio State Univ.*, 239 F. Supp. 3d at 1082. These procedural criticisms thus fail to state a claim.

### B.     SAFE's Due Process Theories Are Meritless (Counts V & VI).

SAFE alleges it was deprived of two types of interests: a property and/or liberty interest in its status as an RSO, and a liberty interest in its First Amendment rights. AC ¶¶ 333, 346 PageID.382, 384. It then alleges that these interests were impaired without due process because Jackson filed the complaint; the complaint and ultimate decision were not based on sufficient evidence; and the sanction exceeded what is authorized by the University's Fest Rules. *Id.* ¶¶ 206, 220, 226 PageID.358–359, 361–362. SAFE does not state a claim on any front.

SAFE cannot demonstrate deprivation of a cognizable property or liberty interest with respect to its RSO status. *See id.* ¶ 333, 350, PageID.382, 385. Property interests are created not by the Constitution but by independent sources of law such as state law. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). SAFE cannot demonstrate an entitlement to its RSO status, or a liberty interest in such status, under state law. Nor can SAFE ground a liberty interest in a purported violation of its First Amendment rights—precisely because the mere withdrawal of RSO recognition does *not* deprive SAFE of its First Amendment rights or, consequently, any liberty interest in those rights. *See supra* at 18–20.

Even assuming deprivation of a cognizable interest, SAFE was provided with

more than sufficient process. It had full notice of the disciplinary charges against it in Jackson's original complaint. Ex. K. And it had multiple opportunities to be heard and voice its objections, including before a student panel and on appeal. *Supra* at 5; Exs. M, N; *see Flaim*, 418 F.3d at 634; *Jaksa*, 597 F. Supp. at 1254. The group's allegations to the contrary are sparse and cannot salvage its claim. SAFE cannot demonstrate that "hir[ing] an outside consultant" (Jackson) to bring a complaint is against any University policy—let alone a due process violation. AC ¶ 206, PageID.358–359. Its allegation that it "should only have been subject to removal from Festifall or required to pay a $75 fine," AC ¶ 226, PageID.362, is nonsensical because it assumes that SAFE was only in violation of the Fest Policy, when it was found to have violated multiple University policies. *Supra* at 8. And while SAFE disputes the evidentiary basis for the findings against it, it was able to voice those objections at multiple opportunities yet was still found accountable by multiple decision-makers. *See* AC ¶¶ 220–221, PageID.361. SAFE otherwise relies on vague, conclusory allegations—*e.g.*, that it lacked "fair notice," *id.* ¶¶ 337, 349 PageID.383, 385—yet alleges no specific facts supporting those conclusions, especially given the extensive process it received. SAFE cannot relitigate the merits of its routine accountability process in federal court under the guise of a due process claim. *See Ohio State Univ.*, 239 F. Supp. 3d at 1080 (stating it is "not the role of the federal courts to set aside decisions of school administrators . . . as lacking in

wisdom or compassion" but to "determine whether the student received sufficient notice and a hearing" (quoting in part *Wood*, 420 U.S. at 326)).

## III. The Amended Complaint Fails To State An Equal Protection Claim (Count VII).

Nor does the AC state an equal protection violation. Plaintiffs do not claim membership in a suspect class. They therefore must assert a "class-of-one" theory, under which they must plausibly allege, among other elements, that they were "intentionally treated differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiffs "must be 'similarly situated' to a comparator in 'all relevant respects.'" *Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (citation omitted).

Despite Defendants addressing this deficiency in the original motion, the AC is *still* devoid of allegations regarding a comparator "similarly situated" to Plaintiffs "in all relevant respects." The AC contends that "other students and organizations who espouse opposing viewpoints or who speak on other issues" receive different treatment. AC ¶ 362, PageID.387. In support, it offers the same conclusory statements that the alleged disciplinary actions and procedures are not "known" to have been taken against any other students or student groups. *See, e.g.*, AC ¶¶ 151–152, 181, 206, PageID.349, 355, 358–359. The AC also newly references historical "civil disobedience" that allegedly did not result in discipline—without providing any details on those incidents or even alleging that the University policies in effect

at the time were similar. AC ¶ 278, PageID.372. Yet the AC conspicuously lacks allegations showing that any of those students or groups are proper comparators—including, at minimum, that they engaged in the same conduct. For Individual Plaintiffs, such conduct includes breaking into a locked University building and defying multiple directives from law enforcement to leave. For SAFE, that conduct includes hosting a protest during a crowded campus event after administrators specifically advised it that the space was already reserved and it lacked permission to do so; lying on the ground and impeding foot traffic during that event; selling food on University property against University rules; and harassing a University Regent at her private residence by trespassing and vandalizing her property. Exs. E, K. The AC's bare comparison cannot sustain this claim. *See, e.g.*, *Smith v. Bauer*, No. 22-cv-382, 2023 WL 2706252, at *7 (W.D. Mich. Mar. 13, 2023).

The AC's single allegation about pro-Israel counter-protesters at Festifall also cannot save this claim. The AC alleges those individuals were not disciplined despite lacking a permit. *See* AC ¶ 230, PageID.363. But the AC does not contend that their actions were sufficiently similar to SAFE's conduct, as necessary to sustain an equal protection claim. For example, Plaintiffs do not allege that the counter-protesters similarly promoted a die-in on the Diag during Festifall, *id.* ¶ 212, PageID.360; that they received and then defied instructions from University officials prior to the event, Ex. K at 5; that they laid on the ground during the event, AC ¶ 222,

PageID.361; that they obstructed or impeded traffic, Ex. K at 5–6; or that they disregarded repeated warnings by administrators and directives by law enforcement. In fact, the *only* commonality is that these alleged counter-protesters were also in attendance at a popular campus-wide event. Ex. K at 5–6; AC ¶ 211, PageID.360. Without more, this amounts to an allegation that the mere presence of counter-protestors or others engaging in expressive activity makes for similarly situated comparators—a proposition courts have rejected repeatedly. *See, e.g.*, *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1152 (6th Cir. 2022); *see also Marcavage v. City of Philadelphia*, 481 F. App'x 742, 749 (3d Cir. 2012) (protestor not similarly situated because plaintiff presented greater "potential for disruption").

Nor have Plaintiffs pointed to any policy or rule facially discriminating on any basis. They claim that the University "adopted policies that violate Plaintiffs' equal protection rights," AC ¶ 358, PageID.386, but all the policies implicated by the AC are content- and viewpoint-neutral and apply equally to all students or RSOs. *See* Exs. A–D. Without any plausible allegations of a facially discriminatory policy or a similarly situated comparator, this equal protection claim fails.

## IV. At Minimum, Damages Claims Against Individual Defendants Must Be Dismissed For Multiple Reasons.

In all events, claims for money damages against Individual Defendants must be dismissed as follows based on personal involvement and immunities.

***Lack of Personal Involvement.*** The AC does not allege President Ono's

personal involvement in the purported constitutional violations, requiring dismissal of the damages claims against him in his individual capacity. *Sears v. Washington*, 655 F. Supp. 3d 624, 627–28 (E.D. Mich. 2023). Like the original pleading, the AC alleges that President Ono "submitted a Request for Action to Defendant REGENTS to make changes to the *Statement*." AC ¶¶ 105–106, PageID.340. But that request and the resulting changes are immaterial to the constitutional violations alleged: Plaintiffs acknowledge that none of the challenged accountability proceedings was based on the updated version of the *Statement*. *See id.* ¶ 155, PageID.349.

Plaintiffs now attempt to bolster their case by alleging that President Ono is the University's chief executive officer and that he has the authority to "ensure that the universities policies are observed by all university officials and other employees." AC ¶¶ 25–26, PageID.327. But damages liability "must lie upon more than a mere right to control employees." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *see also Lipian v. Univ. of Mich.*, 453 F. Supp. 3d 937, 955 (E.D. Mich. 2020) (dismissing claims against University president where he was not alleged to undertake any "individual acts or omissions"). Because President Ono had no alleged involvement in the challenged accountability proceedings, the damages claims against him in his individual capacity must be dismissed. *See, e.g.*, *Crisp v. Neel-Wilson*, No. 15-cv-1265, 2015 WL 5882126, at *1 (S.D. Ohio Oct. 7, 2015).

***Qualified Immunity.*** All Individual Defendants are entitled to qualified

immunity from damages claims in their individual capacities. Qualified immunity applies to "administrators of [a] public university," *Cunningham v. Blackwell*, 41 F.4th 530, 536 (6th Cir. 2022), as well as contractors providing ongoing services to public entities under circumstances like these, *see Filarsky v. Delia*, 566 U.S. 377, 388–89 (2012). It protects "officials from civil liability in the performance of their duties so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016) (quotation marks omitted). Plaintiffs bear the burden to show that Individual Defendants are *not* entitled to qualified immunity, and, at this stage, must plausibly allege facts showing "(1) that [Defendants] violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Kerchen v. Univ. of Mich.*, 100 F.4th 751, 763 (6th Cir. 2024) (citation omitted). "'[C]learly established law' should not be defined 'at a high level of generality'" but instead "must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (citation omitted).

Starting with the First Amendment claims, no clearly established law provides that university employees or officials violate a student's or an RSO's First Amendment rights by applying viewpoint- and content-neutral policies and procedures to misconduct. *See Reichle v. Howards*, 566 U.S. 658, 665 (2012) (plaintiffs must demonstrate a clearly established "more specific right to be free

31

from" the retaliatory act alleged). Nor does clearly established law hold that student reprimands and temporary suspension of an RSO violate any First Amendment-protected rights. And, to the extent Plaintiffs' claim hinges on the Diag permitting policy, it is in fact clearly established that state entities can enforce content-neutral time, place, and manner restrictions. *See, e.g.*, *Nylen v. City of Grand Rapids*, 475 F. Supp. 3d 744, 756 (W.D. Mich. 2019).

For procedural due process, neither the Supreme Court nor the Sixth Circuit has held that disciplinary proceedings like these—involving, *at most*, reprimands or probation for individual students and suspension of an RSO—implicate protectable property rights. Nor do the facts alleged implicate a clearly established liberty interest. *See Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 727 (E.D. Va. 2015). Clearly established law also does not establish Plaintiffs' claimed procedural protections. *Cf. Carney v. Univ. of Akron*, No. 15-cv-2309, 2016 WL 4036726, at *14 (N.D. Ohio July 28, 2016); *see also Gischel v. Univ. of Cincinnati*, 302 F. Supp. 3d 961, 979 (S.D. Ohio 2018) ("The law regarding what process is due in the student disciplinary context is evolving."), *on reconsideration in part*, No. 17-cv-475, 2018 WL 9944971 (S.D. Ohio June 26, 2018).

Finally, no law clearly establishes a class-of-one equal protection claim in the context of university disciplinary proceedings. Such specificity is required to overcome qualified immunity. *See Lunini v. Grayeb*, 395 F.3d 761, 771 (7th Cir.

2005) ("[I]t would be difficult to charge defendants with notice of a clearly established constitutional right [under a class-of-one theory] based on [*Olech*'s] open-ended pronouncement in a case arising under completely different facts.").

***Sovereign Immunity.*** Although the AC no longer seeks damages from President Ono or VPSL Harmon in their official capacities, Plaintiffs seek damages from Stephanie Jackson and Omar Torres in their "professional" capacities. AC ¶¶ 291, 304, PageID.375, 377; *id.* Relief Requested (c), (d), PageID.390. This is synonymous with suing them in their "official" capacities. *See Viola v. Ohio Att'y Gen.*, No. 20-cv-765, 2021 WL 510746, at *11 (N.D. Ohio Feb. 11, 2021); AC ¶ 35, PageID.328 (stating that Torres is sued in his "official" capacity). The AC alleges that Torres and Jackson were both hired by the University "[a]t some point" during the relevant events. AC ¶¶ 34, 39, PageID.328. To the extent the damages claims against Torres and Jackson in their "professional" capacities encompasses the time they were University employees, such claims are barred by sovereign immunity. The University and its officers are arms of the state and thus entitled to such immunity, *Est. of Ritter ex rel. Ritter v. Univ. of Mich.*, 851 F.2d 846, 851 (6th Cir. 1988), and Jackson and Torres are equally entitled to that immunity when sued for actions taken as University employees, *see Kentucky v. Graham*, 473 U.S. 159, 169–70 (1985).

## V.   The Amended Complaint's Class Allegations Should Be Stricken.

In the event any claim survives, it cannot be maintained on a class basis.

Plaintiffs seek to represent all students who publicly advocated for the University of Michigan to divest from Israel and who, after October 7, 2023, faced certain types of accountability proceedings. AC ¶ 259, PageID.368. To maintain a class action, they must satisfy the prerequisites under Rule 23(a) and for one of the three types of actions under Rule 23(b). *Pilgrim*, 660 F.3d at 945–46. A failure on either front "dooms the class," including on a pre-discovery motion to strike. *Id.* at 946. Here, even on the face of the pleading, the proposed class is fatally flawed: it lacks numerosity, predominance, and ascertainability.[6]

### A.     The Class Is Insufficiently Numerous.

Under Rule 23(a)(1), Plaintiffs "must demonstrate that the putative class is 'so numerous that joinder of all members is impracticable.'" *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005) (quoting Fed. R. Civ. P. 23(a)(1)). "The numerosity requirement requires examination of the specific facts of each case[.]" *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). "Impracticability of joinder must be positively shown, and cannot be speculative."

---

[6] Although striking class allegations is "a tool to be used sparingly," courts do so where, as here, the allegations are "legally impermissible" such that no discovery or additional evidence would remedy their defects. *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 n.1 (E.D. Mich. 2015); *see also, e.g.*, *Hutt v. Greenix Pest Control, LLC*, No. 20-cv-1108, 2023 WL 2726357, at *3–4 (S.D. Ohio Mar. 31, 2023); *Jones v. Lubrizol Advanced Materials, Inc.*, 583 F. Supp. 3d 1045, 1058 (N.D. Ohio 2022); *Oom v. Michaels Cos.*, No. 16-cv-257, 2017 WL 3048540, at *7 (W.D. Mich. July 19, 2017); *Green*, 2016 WL 1259110, at *6; *Schilling v. Kenton Cnty.*, No. 10-cv-143, 2011 WL 293759, at *11 (E.D. Ky. Jan. 27, 2011).

*Golden*, 404 F.3d at 965–66 (citation omitted).

Here, the AC asserts only that the class includes "more than 35 persons." AC ¶ 260, PageID.368. Courts routinely hold that proposed classes of this size (or even larger) are insufficiently numerous to warrant class certification. *See, e.g.*, *O'Neil v. Appel*, 165 F.R.D. 479, 490 (W.D. Mich. 1996) (56 plaintiffs).[7] Nor does the AC adequately allege the impracticability of joinder, which requires consideration of "'ease of identifying members and determining addresses, ease of service on members if joined, [and] geographical dispersion' among other things." *Turnage v. Norfolk S. Corp.*, 307 F. App'x 918, 921 (6th Cir. 2009) (citation omitted).

Defendants raised this issue in their original motion, and the AC offers no real response. The allegation that graduated putative class members "are now geographically dispersed," AC ¶ 264, PageID.369—which is at least partially contradicted by allegations that the two graduated Plaintiffs still reside in southeast Michigan, AC ¶¶ 12–15, PageID.325—is not enough to substantiate that joinder would be impracticable. *See Garza v. Fusion Indus., LLC*, No. 20-cv-336, 2023 WL 6276713, at *5 (W.D. Okla. Sept. 26, 2023) (indicating that where 80% of class lives

---

[7] *See also, e.g.*, *Garza v. Fusion Indus., LLC*, No. 20-cv-336, 2023 WL 6276713, at *4 (W.D. Okla. Sept. 26, 2023) (30 to 40 plaintiffs); *Day v. Whirlpool Corp.*, No. 13-cv-02164, 2014 WL 12461378, at *4 (W.D. Ark. Dec. 3, 2014) (40 plaintiffs); *In re Park Cent. Glob. Litig.*, No. 09-cv-765, 2014 WL 4261950, at *4 (N.D. Tex. Aug. 25, 2014) (112 to 130 plaintiffs); *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995) (200 potential and 39 likely plaintiffs).

in the same state, lack of dispersion weighed heavily against impracticability); *In re Park Cent. Glob. Litig.*, No. 09-cv-765, 2014 WL 4261950, at *5 (N.D. Tex. Aug. 25, 2014) (rejecting numerosity and noting that there was "no evidence of *significant* geographic diversity among purported class members" (emphasis added)).

As for allegations about financial hardship in pursuing individual claims, AC ¶¶ 263–264, PageID.369, those do not support class certification because Plaintiffs seek extensive compensatory damages, punitive damages, and attorney fees, AC Relief Requested, PageID.390. This case therefore "does not present the situation in which the small magnitude of each claim relative to the high cost of individual litigation makes a class action the only effective mechanism for seeking redress." *O'Neil*, 165 F.R.D. at 491 (quotation marks omitted). If anything, the varied harms that members of the proposed class are alleged to have experienced mean that a class action would be *more* impracticable than the alternative of individual or joined suits. *See, e.g.*, *Sullivan v. City of Berkeley*, 328 F.R.D. 352, 355 (N.D. Cal. 2018).

## B. Individualized Issues Defeat Predominance And Ascertainability.

On the face of the AC, the class claims and definition implicate far too many individualized questions to allow for certification. Plaintiffs seek class-wide money damages and acknowledge that they must therefore satisfy Rule 23(b)(3) requirements. *See* AC ¶ 267, PageID.370; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) ("[I]ndividualized monetary claims belong in Rule

23(b)(3).""). This requires showing that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry requires assessing "the legal or factual questions that qualify each class member's case as a genuine controversy," and whether those questions are "subject to generalized proof, and thus applicable to the class as a whole." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017) (quotation marks omitted).

Plaintiffs' claims unavoidably implicate many "substantive issues that will control the outcome," but will not be subject to common proof. *Id.* (quotation marks omitted). Plaintiffs do not seriously dispute this fact: the only common question they even allege is Defendants' supposed "failure to comply with due process," AC ¶ 262, PageID.369, meaning they do not even attempt to show predominance as to their First Amendment and equal protection claims. In reality, all three of their claims involve individualized inquiries that overwhelm any common questions.

Counts I through III, alleging First Amendment violations, hinge on the particulars of a given student's expression, the defendant's response, and any causal connection and retaliatory animus—fact-intensive questions that multiple courts have found to preclude class treatment. *See, e.g.*, *Black Lives Matter, D.C. v. United States*, No. 20-cv-1469, 2025 WL 823903, at *17 (D.D.C. Mar. 14, 2025); *Gaddis v. Zanotti*, No. 19-cv-781, 2020 WL 6382020, at *5 (S.D. Ill. Oct. 30, 2020). Counts IV

through VI, alleging procedural due process violations, involve distinct merits questions for each plaintiff about the consequences at issue and the notice and process afforded, particularly since the proposed class spans different accountability proceedings. *See Daskalea v. Washington Humane Soc'y*, 275 F.R.D. 346, 360–61, 369 (D.D.C. 2011); *Torres v. Goddard*, 314 F.R.D. 644, 660–62 (D. Ariz. 2010). And Count VII, alleging equal protection violations, requires each plaintiff to establish disparate treatment as compared to other students similarly situated to that plaintiff in all relevant respects, an inherently individualized inquiry. *Cf. Hudson v. City of Chicago*, 242 F.R.D. 496, 509 (N.D. Ill. 2007).

In an apparent effort to address these deficiencies, the AC newly alleges that Omar Torres "did not provide any individualized evidence that required a fact-based inquiry specific to any individual" as part of the Ruthven collective arbitration proceeding. AC ¶ 159, PageID.350. This (sole) allegation does not help Plaintiffs because Plaintiffs are seeking to certify a class not just with respect to the Ruthven collective arbitration, but across multiple disciplinary proceedings captured in the class definition. For all the reasons discussed above, at minimum there will be individualized questions across different disciplinary proceedings.

Even the class definition requires individualized determinations that do not allow for an ascertainable class, independently precluding certification. Ascertainability is an implied requirement of Rule 23. *Young v. Nationwide Mut. Ins.*

*Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012). It demands a class "sufficiently definite . . . that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* at 538. A class definition must allow the court "to determine membership in the class without the need for individualized fact finding." *Crossroads Grp., LLC v. City of Cleveland Heights*, 346 F.R.D. 75, 83 (N.D. Ohio 2024); *see Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) (holding that where "the only way to distinguish between the two sets of individuals is to engage in individualized fact-finding, . . . [a] class definition [is] unsatisfactory").

Plaintiffs' proposed class definition does not meet these standards. First, it requires the court to assess which students "publicly advocated for the University of Michigan to divest from Israel." AC ¶ 259, PageID.368. That task would involve adjudicating the advocacy activities of all students subject to disciplinary proceedings at the University in the relevant time period and making case-by-case judgments about the nature of each student's political stance. The class definition also includes students allegedly "required . . . to disprove the actions alleged against them by the University or its agents." *Id*. This would require the Court to make individualized determinations—about how the burden of proof was understood and applied in individual proceedings—just to decide who belongs in the class. Because Plaintiffs' class allegations raise unavoidable individualized issues, both in the class claims and in the class definition, Plaintiffs' class allegations are facially deficient.

## VI.    The Amended Complaint Should Be Dismissed With Prejudice.

Finally, the AC should be dismissed with prejudice. When a plaintiff is "on notice about the deficiencies in its complaint[] and yet ma[kes] few changes in its first round of amendments," denial of leave to amend is appropriate. *Wysong Corp. v. APN, Inc. (17-1975)*, 889 F.3d 267, 273 (6th Cir. 2018); *accord Lewis v. Dow Chem. Co.*, No. 24-cv-12911, 2025 WL 296598, at *1 (E.D. Mich. Jan. 23, 2025). In short, even though Plaintiffs were "give[n] . . . a chance to add facts and context," they have not done enough to "nudge [their] complaints across the plausibility threshold." *Wysong*, 889 F.3d at 273. Nor can they, given the fundamental legal deficiencies in their claims.

## <u>CONCLUSION</u>

Defendants respectfully request that the Court either dismiss the Amended Complaint in its entirety and with prejudice, or, if any claims remain, strike the class action allegations.

Dated: May 6, 2025

Brian M. Schwartz (P69018)
Miller, Canfield, Paddock
and Stone, P.L.C.
150 W. Jefferson, Ste. 2500
Detroit, MI 48226
(313) 963-6420
schwartzb@millercanfield.com

Respectfully submitted,
/s/ Lauren J. Hartz
Lauren J. Hartz (D.C. Bar No. 1029864)
Ishan Bhabha (D.C. Bar No. 1015673)
Jenner & Block LLP
1099 New York Avenue, NW Suite 900
Washington, DC 20001-4412
+1 202 639 6000
lhartz@jenner.com
ibhabha@jenner.com

*Counsel for Defendants*

40

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NORA HILGART-GRIFF et al.,     )
    )
            Plaintiffs,     )    Case No. 2:24-cv-13425
    )
      v.     )    Hon. Laurie J. Michelson
    )    Mag. Elizabeth A. Stafford
REGENTS OF THE UNIVERSITY OF     )
MICHIGAN et al.,     )
    )
            Defendants.     )

---

### BRIEF FORMAT CERTIFICATION FORM

---

I, Lauren J. Hartz, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☑ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☑ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☑ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☑ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☑ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☑ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☑ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

Dated: May 6, 2025             /s/ Lauren J. Hartz

41

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 6, 2025, I electronically filed the foregoing

Defendants' Motion To Dismiss The Amended Complaint With Prejudice Or, In

The Alternative, To Strike Plaintiffs' Class Allegations, with the Clerk of the Court

using the ECF system which will send notification of such filing to all counsel of

record.


By: /s/ Lauren J. Hartz