# EXHIBIT N



## Student Organization Advancement & Recognition (SOAR)
Vice President for Student Life Review

| Case Number | 25-101 | Date | March 25, 2025 |
|---|---|---|---|
| Complainant | Stephanie Jackson | Respondent | SAFE |

| Appeals Board Representatives | Central Student Government | Faculty | Staff |
|---|---|---|---|
| | ▇▇▇▇▇ | ▇▇▇▇▇ | ▇▇▇▇▇ |

This report serves as the review of the Appeals Board recommendations (see Case 15-101 Appeals Board Report) concerning the above-referenced case and was conducted pursuant to the accountability procedures outlined in the Student Organization Advancement & Recognition (SOAR) manual. As summarized below, the Vice President for Student Life **[MODIFIES]** the Appeals Board's recommendations.

In addition to my review of the Appeals Board's recommendations, I have reviewed the relevant documents related to the case (Complainant and Respondent files), the SOAR hearing case transcript, the Student Governing Body (SGB) recommendations, and the Official University Decision from the Associate Vice President and Dean of Students.

The Appeals Board considered three grounds for appeal asserted by SAFE. First, that *proper procedures were not followed*. Second, that *the evidence clearly does not support the findings*. And third, that *the sanctions/interventions are insufficient or excessive related to the violation*. After an extensive review, I am modifying the recommendations as I agree in part and disagree in part with the Appeals Board.

I agree in part with the Appeals Board's determination with respect to the Appeal Rationale (1): *Proper procedures were not followed*. The Appeals Board determined, and I agree, that the hiring of an external consultant does not constitute an applicable violation. The SOAR manual clearly allows the University to bring a complaint. In addition, the SOAR manual identifies how the formal pathway vs. adaptable conflict resolution pathways will be used in proceedings and was followed appropriately. I do not agree with the Appeal Board's determination that there was an inappropriate application of the Standards of Conduct to the conduct that occurred on Regent Hubbard's private property. There is ample evidence that the demonstration at Regent Hubbard's property falls within the scope of the policy and qualifies as off-campus behavior that violated the Standards of Conduct due to its obvious and serious threat or harm to the safety of University community members. I recognize and acknowledge the complexity associated with determining whether behaviors pose an obvious and serious threat or harm any member (s) of the community.

The Appeals Board appeared to use the same logic as the SGB when they assessed each individual action separately, stating that "the harm alleged amounts to noise, littering, solicitations, and loitering – none of which constitute a serious threat or harm," as opposed to considering the cumulative effect of the series of actions that occurred at Regent Hubbard's private home. The Appeals Board may have also failed to consider evidence assessed by the Dean of Students that contributed to the nature of the demonstration. The Official University Decision highlighted evidence, for example, that demonstrated the threatening nature of the demonstration, including that individuals arrived unannounced to Regent Hubbard's front porch while wearing masks with a demand list, left body bags covered in 'blood' on her lawn, and other items intended to represent a scene of death and destruction. SGB also stated that it was "an alarming and intimidating disruption," acknowledging the severity of the demonstration.  When taking the totality of the circumstances into consideration, this was not just noise and litter, it created an obvious and serious threat or harm to any person who was seeing it occur on their front lawn.



With respect to Appeal Rationale (2): *The evidence clearly does not support the findings*; I agree with the Appeal Board's determination that finds SAFE responsible for creating a safety hazard at Festifall. SAFE's decision to hold a demonstration at Festifall after being explicitly told that the Diag was already reserved and otherwise being made aware that they could not use the Diag space without a permit, displayed a clear pattern of disregard for the rules applicable to SAFE. To be clear, these rules and the requirement for reserving spaces like the Diag apply to all student organizations, are documented in written policies, and are necessary for our hundreds of student organizations to function on campus. In addition, I also agree with the Appeal Board's determination that SAFE was responsible, as an organization, for the demonstration at Regent Hubard's home.

With respect to Appeal Rationale (3): *The sanctions/interventions are insufficient or excessive to the violation*, I do not agree with the Appeal Board's determination that the sanctions placed on SAFE are unnecessarily punitive, and contradictory to the process of restorative justice. The Appeals Board recommends that SAFE be suspended not for two years, but rather "suspended until the completion of educational requirements." The Official University Decision added a two-year Disciplinary Suspension that is reviewable upon completion of educational measures no sooner than Winter 2026. In essence, completion of the educational measures by the end of Fall 2025 would provide a pathway for review and possible reinstatement no sooner than Winter 2026. Given the severity and the fact that there was more than one finding of responsibility, these sanctions are both appropriate and restorative as they create a timely pathway toward re-recognition.

## Modified Sanctions

As a result of the Respondent's actions, and to support their educational growth and development, the Vice President for Student Life modifies the recommendations as follows:

I appreciate the Appeal Board's suggestion of creative alternative measures in support of restorative justice; however, the recommendations do not provide an appropriate level of accountability or a realistic opportunity for SAFE to take the time necessary complete the meaningful educational restorative work that was outlined in the Official University Decision.

My response to each of the suggested alternative measures are as follows:

- **Engagement with Interfaith Programming: (Reject)** – SAFE has not indicated it is a faith-based organization, and the suggested interfaith programming is not directly related to this case.
- **Probation with Oversight (Reject)** – A probation which would allow SAFE to remain active does not allow for appropriate accountability, and the suggested probationary timeline does not allow adequate time for the organization to complete the educational sanctions in a meaningful way. The Appeals Board's recommendation that SAFE be suspended until completion of educational requirements within aforementioned timeline is acceptable and appropriate.
- **Social Media Use Education and Restriction (Reject)** – The Appeals Board suggestion to require modification and accountability for all social media posts is not possible because the University does not manage content of social media accounts for voluntary student organizations.

## Next Steps

This decision is final and concludes this matter. If you have any questions regarding this report, please contact the Center for Campus Involvement.

Sincerely,

Martino Harmon, Ph.D.
Vice President for Student Life